## Howe v. White et al.

[No. 20,291. Filed January 28, 1904.]

Appeal and Error.—*Bill of Exceptions.*—*Certificate.*—A statement by a person who took down the evidence, interposed between the conclusion of the bill of exceptions and the certificate of the judge, while unnecessary and improper, does not vitiate the bill. *pp. 76, 77.*

Same.—*Bill of Exceptions.*—*Certificate.*—A memorandum at the conclusion of a bill of exceptions, signed by the judge, that on April 19, 1902, the bill of exceptions was presented to the judge, followed by a further statement that the person who signed the bill of exceptions was the judge before whom the cause was tried, that the bill contained all the evidence given in the cause, that it was presented to the judge, March—, 1902, and that it was signed by him, the certificate being dated, April

19, 1902, is sufficient, it being presumed that the memorandum and certificate were signed on the same day, they will be treated as constituting a single certificate. *p. 77.*

APPEAL.—*Bill of Exceptions.—Certificate.*—The law does not require the trial judge to certify to the filing of the bill of exceptions, and any statement on that subject in his certificate is mere surplusage. *p. 78.*

SAME.—*Bill of Exceptions.—Filing.*—The fact that the bill of exceptions was filed in the cause, and the date of such filing, must be shown either by an entry of record or by the certificate of the clerk. *p. 78.*

SAME.—*Bill of Exceptions.—Signing and Filing.—Certificate.*—A certificate of the clerk to the transcript stating that the certificate attached to the transcript of the evidence is the certificate of the judge who tried the cause, and that said transcript and bill of exceptions were afterwards filed in the clerk's office, sufficiently shows that the bill was filed after being signed by the trial judge. *p. 78.*

PRINCIPAL AND SURETY.— *Guardian's Bond.—Payment by Surety without Suit.* —A surety on a guardian's bond may pay the amount for which he is liable as soon as such liability is found to exist without waiting for a judgment to be rendered. *p. 83.*

SAME.—*Guardian's Bond.—Defalcation before Execution of Bond* —Sureties on a guardian's bonds are not liable for defalcations of the guardian occuring before the execution of the bonds signed by them. *p. 83.*

SAME.—*Guardian's Bond.—Sureties.—Apportionment of Liability.*—Where sureties on bonds of a guardian executed at different times agreed among themselves upon an apportionment of liability of each for a defalcation of the principal, a recovery·can not be had by a surety on a mortgage given by the principal to indemnify him as such surety, where no proof is made of the liability of such surety. *pp. 83, 84.*

SAME.—*Guardian's Bond.—Discharge of Guardian.—Recovery by Surety of Amount Paid.—Estoppel.*—The settlement and discharge of a guardian will not create an estoppel against a surety on his bond to enforce a claim under a mortgage given to indemnify him as such surety, for an amount actually paid by him as such surety. *p. 84.*

From Superior Court of Allen County; *J. H. Aiken*, Judge.

Suit by Frances M. Howe against Edward White and another. From a judgment for defendants, plaintiff appeals. Transferred from Appellate Court, under clause 2, §1337j Burns 1901. *Reversed.*

*T. E. Ellison* and *H. G. Keegan*, for appellant.
*A. A. Purman, R. R. Purman, W. G. Colerick, K. C. Larwill* and *Guy Colerick*, for appellees.

DOWLING, J.—Action by appellant against appellees to quiet her title to lots numbered four and five in Archer's addition to the city of Ft. Wayne. The complaint was in the common form. John W. White, one of the appellees, disclaimed all interest in the lots. Edward White, the other appellee, filed an answer in denial, and, by a cross-complaint, asserted a mortgage lien upon the lots described in the complaint, and demanded a foreclosure of the same. The appellant filed a special answer to the cross-complaint, together with a general denial. Reply in denial. A trial by the court resulted in a finding in favor of the plaintiff below against John W. White, but against her upon the cross-complaint of Edward White. Motion by appellant for a new trial because of error in the assessment of the amount of the recovery, the insufficiency of the evidence to sustain the finding, and for the reason that the finding was contrary to law. Motion for a new trial overruled, and judgment on finding.

Error is assigned upon the decision of the court overruling the motion for a new trial.

The questions presented on this appeal arise upon the evidence, and counsel for appellees earnestly contend that the evidence is not in the record. Their objections are that the bill of exceptions is not properly certified by the judge who tried the cause, that it appears that the bill was filed in the clerk's office before it was signed by the judge, and that it does not show that it contains all the evidence given in the cause.

The form of certificate to the bill of exceptions adopted in this case can not be commended. It consists largely of recitals which are superfluous and useless. It is divided into two parts. The essential facts to be stated in the brief and simple certificate required of the trial judge may be discovered by diligent search among the unnecessary matters with which the certificate is encumbered.

A long statement by a person who took down the evi-

dence, interposed between the conclusion of the bill and the certificate of the judge, while unnecessary and improper, does not vitiate the bill.

The first memorandum signed by the judge comes next after this superfluous paper, and states that on April 19, 1902, the bill of exceptions was presented to the judge. This memorandum is followed by a further statement which, stripped of its verbiage, shows these facts: That the person who signs the bill is the judge before whom the cause was tried; that the bill of exceptions contains all the evidence given in the cause; that it was presented to the judge March —, 1902; and that it was signed by him. The additional statement is made in this certificate that the bill, after being signed by the judge, "was filed with the clerk of said trial court." The certificate is dated April 19, 1902, and the signature of the judge of the superior court of Allen county is attached. This certificate must be held sufficient. The two statements signed by the judge bear the same date, and it is to be presumed that they were signed on the same day. They may be treated as constituting a single certificate.

The recital in the certificate that the bill was "afterwards filed with the clerk" can not be interpreted to mean that the filing preceded the signing of the bill. The statute seems to make it the duty of the judge after signing the bill to cause it to be filed. The provision is as follows: "When the record does not otherwise show the decision or grounds of objection thereto, the party objecting must, within such time as may be allowed, present to the judge a proper bill of exceptions, which, if true, he shall promptly sign and cause it to be filed in the cause; if not true, the judge shall correct, sign, and cause it to be filed without delay." §641 Burns 1901. The statement in the certificate must be understood to indicate that, after signing the bill, the judge caused it to be filed as provided in §641, *supra*.

It appears from the record that the judgment was rendered March 22, 1902, and that the plaintiff below was allowed ninety days from that date in which to file her bill of exceptions. The certificate of the judge shows that the bill was presented to him April 19, 1902, and that it was signed by him the same day. This was within the time allowed by the court. The law does not require the trial judge to certify to the filing of the bill, and any statement on that subject in his certificate is mere surplusage, and amounts to nothing. The fact that the bill was filed in the cause, and the date of such filing, must be shown either by an entry of record or by the certificate of the clerk. The former is the better practice, but the latter has sometimes received the sanction of this court. *Indiana, etc., R. Co.* v. *Lynch,* 145 Ind. 1; *Richwine* v. *Jones,* 140 Ind. 289; *Miller* v. *Evansville, etc., R. Co.,* 143 Ind. 570; *Gish* v. *Gish,* 7 Ind. App. 104; *Louisville, etc., R. Co.* v. *Terrell,* 12 Ind. App. 328; *Martin* v. *State,* 148 Ind. 519.

It is true that no entry on the record shows the filing of the bill of exceptions in this cause, but the certificate of the clerk to the transcript states that the "certificate attached to the said transcript of the evidence by John H. Aiken, judge of the superior court of Allen county, Indiana, is the certificate of the judge who tried said cause, and that said transcript and bill of exceptions were afterwards filed in my office on the 19th day of April, 1902." *Martin* v. *State, supra.* We think it is sufficiently shown by the clerk's certificate that the bill of exceptions was first signed by the trial judge, and afterwards filed in the cause.

We proceed now to an examination of the error assigned. The material allegations of the cross-complaint of the appellee Edward White were as follows: That on September 17, 1894, the said Edward White together with one James B. White became sureties for one John Kalbus on a bond that day given by Kalbus to the State of Indiana, in the

sum of $700, conditioned for the faithful performance of his duties as guardian of the person and property of one Charles Kalbus; that on said day the said John Kalbus was the owner of the lots described in the complaint as numbers four and five in Archer's addition to the city of Ft. Wayne, and that on said day he executed to the said Edward White and James B. White a mortgage in the sum of $1,000 on said lots, with the condition that he would secure the said Edward and James B. White against loss and expense, including attorney's fees, and save them harmless as sureties on the said bond; that said John Kalbus did not perform the condition of said mortgage; that on October 17, 1898, the Allen Circuit Court set aside the reports of the said John Kalbus theretofore made as guardian of the said Charles Kalbus, and ordered said guardian to pay to the clerk of said court $506.20 for the use of his said ward, together with costs amounting to the further sum of $46.75, within thirty days; that the said Edward White, as such surety, was afterwards compelled to pay to the clerk of the Allen Circuit Court $243.80 on account of his liability on said bond, with the further sum of $22.50 costs, which sums, with interest thereon, are now due; that afterwards the said John Kalbus executed a mortgage to the appellant Frances M. Howe on the same real estate, by reason of which the appellant claims an interest in said lots, but that if any such interest exists it is inferior to the lien of the said Edward White; that said Edward White was compelled to employ attorneys to foreclose his said mortgage, and that $100 is a reasonable fee for such service, etc. A copy of the mortgage was filed with the cross-complaint.

The appellant Mrs. Howe filed her answer to the cross-complaint in two paragraphs, the first being a general denial. The second admitted the execution of the mortgage by Kalbus to Edward White and James B. White, and averred that on February 27, 1896, the said sureties ap-

peared in the Allen Circuit Court, and, upon their application, were released from all liability on said bond; that on the same day the Fidelity, Surety & Casualty Company of Maryland became the surety for the said John Kalbus; that afterwards, on March 9, 1896, the said John Kalbus resigned his trust as such guardian, and that he was discharged therefrom; that shortly thereafter the said James B. White and Edward White caused a release to be placed upon the mortgage record on the margin of the copy of the mortgage to them, in these words: "We severally acknowledge full payment and satisfaction of the annexed mortgage, this 29th day of February, 1896. James B. White." That afterwards, relying upon the release of the said guardian and his sureties, and also upon the release of said mortgage, the plaintiff loaned to the said John Kalbus $600, and took a mortgage upon said lots as security for said loan; that said Kalbus failed to repay said loan to her; that he afterwards executed a deed of said lots to Thomas E. Ellison, who conveyed the same by deed to the plaintiff; that no judgment was at any time rendered against the said Edward White in any case to which the said plaintiff was a party for any debt or default of the said John Kalbus, and that if the said Edward White ever paid anything for said Kalbus, as his surety on said bond, such payment was a voluntary one; and that the said Edward White is estopped from setting up any claim under the said mortgage. A reply in denial of this answer was filed by Edward White.

The controversy is upon the issues formed by the cross-complaint of Edward White, the second paragraph of the answer of the appellant thereto, and the reply. The proof showed that on March 20, 1893, John Kalbus was appointed by the Allen Circuit Court the guardian of Charles Kalbus, a person of unsound mind, and that he gave bond with August F. Schuch and others as his sureties; on September 17, 1894, he filed an additional bond in a penalty

of $700, with sureties whose names do not appear; on September 20, 1895, he filed a further bond in the sum of $700, with James B. White and Edward White as sureties.   On the —— day of ———— he gave an additional bond in the sum of $1,500 with the Fidelity, Surety & Casualty Company of Baltimore, Maryland, as surety.   It was also proved that Kalbus continued to act as such guardian until March 9, 1896, when he resigned his trust. While acting as such guardian, he filed in said court three reports dated, respectively, September 20, 1894, October 24, 1895, and January 20, 1896, the last report being approved February 26, 1896.   September 16, 1896, on petition of George Decker, who had been appointed guardian of the person and estate of the said Charles Kalbus, the order approving the last report of the former guardian, John Kalbus, was set aside, and, upon exceptions filed by said Decker to said report, the court found that there was due from said Kalbus, on account of the estate of his former ward, $506.20, with costs, which sum said Kalbus was ordered to pay within thirty days.

The court thereupon made the following order and entry of September 10, 1898:   "*In re* Guardianship of Charles Kalbus.   Comes now the Fidelity, Surety & Casualty Company of Maryland, John W. White, administrator of James B. White, deceased, and Edward White, August F. Schuch, and Alfred Daugherty, and pay into court the sum of $506.20, and the further sum of $46.75 on costs herein, being payment in full of all liability as sureties on the bond of said guardian, and ask the court to be discharged from further liability herein.   It is therefore ordered by the court that said sureties be, and they are hereby, discharged from all further liability herein.   And it is ordered by the court that the clerk of this court pay to said Charles Kalbus or his attorney the sum of $518.71, and, upon taking his receipt therefor, be discharged from any further liability on account of the same."

The sureties on the several bonds of John Kalbus, by an arrangement among themselves, paid into court the said sum of $506.20, and the costs taxed at $46.75, in the following proportions: The Fidelity, Surety & Casualty Company, $192.75, on the principal sum, and $17.78 on the costs; Edward White, $243.80 on principal, and $22.50 on costs; August F. Schuch, $69.65 on principal, and $6.47 on costs. September 17, 1894, John Kalbus was the owner of lots four and five in Archer's addition to the city of Ft. Wayne, Allen county, Indiana, and on that day he executed to James B. White and Edward White a mortgage on said lots to secure them against loss and expense, including attorney's fees, and to save them harmless on the bond given to the State by Kalbus, as guardian of Charles Kalbus, to the extent of $1,000, which amount the said Kalbus expressly agreed to pay without relief from valuation or appraisement laws. The mortgage was duly recorded in the proper office within the time required by law. On the margin of the record of the said mortgage, the following entry appeared: "We severally acknowledge full payment and satisfaction of the annexed mortgage, this 29th day of February, 1896. James B. White. Attest: George W. Fickler, recorder of Allen county." September 19, 1896, John Kalbus mortgaged the said lots numbered four and five in Archer's addition, etc., to Mrs. Howe, the appellant herein, to secure the payment of a loan of $600, evidenced by a note payable three years thereafter, with interest, and exchange on New York. This mortgage was duly recorded. September 19, 1898, John Kalbus conveyed these lots by quitclaim deed to Thomas E. Ellison, in consideration of $1, and an agreement on the part of Ellison to save Kalbus harmless from the mortgage to Mrs. Howe. March 28, 1899, Ellison and wife, by quitclaim deed, conveyed the said lots to Frances M. Howe, the appellant, for $1, and Mrs. Howe thereupon canceled the mortgage executed to her by Kalbus.

It was not necessary that a judgment should be rendered against the appellee Edward White before payment by him of the amount for which he was liable on the bond of Kalbus. As soon as such liability was found to exist, if Kalbus, the principal in the bond, failed to pay it, his sureties on that bond, or any of them, had the right to pay the amount due, and to sue their principal, or to seek contribution from their co-sureties. But the proof shows that Kalbus gave at least three different bonds as guardian— one at the time of his appointment for $1,200, on which August F. Schuch and Alfred Daugherty were sureties; one for $700, September 17, 1894, on which James B. White and Edward White were sureties; and one February 27, 1896, for $1,500, on which the Fidelity, Surety & Casualty Company was surety. The sureties on these several bonds were not liable for defalcations of the guardian occurring before the execution of the bonds signed by them respectively. *Parker* v. *Medsker,* 80 Ind. 155; *Moody* v. *State, ex rel.,* 84 Ind. 433. There might be a separate liability upon each bond, or the sureties on one bond only might be liable for the failure of the guardian faithfully to perform the duties of his trust. *Lowry* v. *State, ex rel.,* 64 Ind. 421; *State, ex rel.,* v. *Sanders,* 62 Ind. 562; *Parker* v. *Medsker, supra; Moody* v. *State, ex rel., supra; Williams* v. *State, ex rel.,* 89 Ind. 570.

Whether Edward White was legally liable upon the bond executed by him as surety for any sum, and, if so, to what amount, depended upon the character of the breach charged, and the date when it occurred. Whenever the amount of that liability was ascertained, whether by a finding and judgment of a court or by an investigation of the accounts of the guardian, the surety had the right to pay the amount due, and to look to his principal in the bond, and any securities given by him, for repayment. But in the absence of a judgment against him, he could recover against his principal in the bond only such sum as he should prove

that he was liable to pay and that he had actually paid. If more than one bond was executed by the guardian, the sureties on each could pay and discharge the amount of the liability on the several bonds executed by them. But they ·could not arbitrarily apportion the amounts to be paid among themselves without regard to the actual liability of their principal upon each separate bond. The amounts paid by the several sureties on the bonds executed by Kalbus may have been correctly apportioned, but there was no proof of that fact. The order of the court did not attempt to ascertain the extent of the liability of either principal or sureties upon the several bonds, but only the gross or total liability upon all the bonds.

The appellee could recover upon his mortgage only such sum as he was legally liable for, and actually paid upon the particular bond executed by him. What that amount was is not shown by the proof in the case. If he was liable for some amount on the bond executed by him and James B. White, the sum of such liability may be proved, and, if paid by the appellee Edward White, he can recover it in his action to foreclose his mortgage. The amount of that liability, however, must be established by other evidence than the order of the court declaring the total liability of Kalbus on all the bonds executed by him.

The release of the mortgage by James B. White, one of the mortgagees, did not affect the rights of Edward White under that instrument. Neither did the supposed settlement and discharge of Kalbus, as guardian, create an estoppel against Edward White to enforce his claim under his mortgage, if in fact he· became liable as surety for some amount, and actually paid it.

The evidence in regard to the payment of the $243.80 and costs by Edward White was singularly indefinite, but seemed to indicate that the amount paid was advanced for him by the administrator of his father's estate, and was charged against him as one of the heirs, in the account

of the administrator. Giving this evidence the most favorable construction, and treating it as establishing the fact that Edward White paid $243.80 on account of the total liability of John Kalbus as guardian, and $22.50 as costs, the proof is not sufficient to sustain the finding in favor of the appellee Edward White, for the reason that there was no evidence that any part of this total liability of Kalbus was upon the bond signed by White as surety, or that the amount paid by White was the amount, or any part of the amount, for which he was liable as surety on that bond.

The motion for a new trial should have been sustained. Judgment reversed, with instructions to sustain the motion for a new trial, and for further proceedings in conformity to this opinion.