JAMES K. HOOK, Administrator, *et al.*, AND WILLIAM THRASH *et at.*, Interveners, Appellants, v. THE GARFIELD COAL COMPANY, Appellee.

**Wills:** POWER OF SALE: *What is sale.* Where testator's will gave his wife a life estate in his lands, and directed that she should not sell any of the real estate, she had no authority to make a mining lease whereby the lessee might remove all the coal he desired, at a certain royalty—at decedent's death—since such lease was a sale of real estate.

**LIFE TENANT:** *Authority to lease mine.* A life tenant has no implied authority to make a mining lease, where the mines were not in operation at the time of the vesting of the life estate.

**MINING LEASE:** *Right to make before admeasurement of dower.* A widow whose dower has not been admeasured has no interest in the lands of her husband, so as to make a mining lease thereof.

**Administrators:** RIGHT TO SUE FOR TRESPASS ON LANDS OF DECEDENT. An administrator cannot maintain trespass for injuries to real estate of his intestate.

**Right to Prove Plea:** WAIVER OF OBJECTION TO PLEA. Where administrators brought trespass for injuries to real estate of their intestate, and they amended their petition so far as to show

that the heirs and devisees had assigned their claims for the injuries to the plaintiffs, and had authorized plaintiffs to prosecute their claims, and no attack was made on the amendment to the petition, and no issue of misjoinder or of plaintiff's capacity to sue was tendered by the pleadings, it was error to refuse to allow plaintiffs to prove the heirship of their assignors, and that the assignment had been made as alleged.

OBJECTION BY MOTION TO DIRECT VERDICT. Where administrators sued for damages for an injury to the real estate of their intestate, and amended their petition so as to show that the heirs and devisees had assigned their claims for such injuries to plaintiffs, and no attack was made on the amendment, a motion by defendant to direct a verdict in his favor on the ground that the plaintiffs had no capacity to maintain the action should have been overruled.

SUBSTITUTION OF PARTIES. Where administrators sued for damages for an injury done to real estate of their intestate, and thereafter the administrator's attorney, who also represented the heirs, asked that the heirs migh be substituted as plaintiffs, the court should have allowed the substitution.

*Appeal from Mahaska District Court.*—HON. A. R. DEWEY, Judge.

TUESDAY, OCTOBER 16, 1900.

ACTION for trespass. Trial to a jury. Directed verdict for defendant, and plaintiffs appeal.—*Reversed.*

*Bolton, McCoy & Bolton* and *Dan. Davis* for appellants.

*L. C. Blanchard* and *John O. Malcolm* for appellee.

DEEMER, J.—John Thrash died testate January 29, 1887, seised of 40 acres of land in Mahaska county. He left surviving Mary T. Thrash, his widow, and William Thrash, Lawrence A. Thrash, Douglas Thrash, John Thrash, Hillard Thrash, and Richard Thrash, sons, and Rachel Faulkner, a daughter. The material parts of decedent's will are as follows: "I give and bequeath unto my wife, Mary T. Thrash, all of my property, both real and personal and mixed, of whatsoever kind and where-

ever situated, to have and to hold as long as she may live, and to use the same for her support in any manner she chooses, except she is not to sell any of the real estate I may die possessed of. (3) I direct and order that after the death of my wife, Mary T. Thrash, that whatever is left of my estate be disposed of as follows: To my daughter Elvy Thrash, the one thirty-second of all my property. (4) To my daughter Rachel Faulkner, wife of David Faulkner, the one thirty-second of all my property. (5) All the rest, residue and remainder of my property I devise and bequeath to my sons, William, Lawrence A., Miletus, Warren, Douglas, John, Hillard, and Richard, share and share alike.". Mary T. Thrash, widow, was appointed executrix, and duly qualified and acted as such until her death, about the year 1894. She left a will in which she devised all her property to her children, or the heirs of their bodies, share and share alike. As the estate of John Thrash had not been settled at the time of the death of the executrix, plaintiffs, Hook and De Long, were appointed administrators of the estate. They were also appointed administrators of the estate of Mary T. Thrash. It is claimed that these administrators were ordered and directed to sell the real estate owned by John Thrash at the time of his decease, for the payment of his debts—but more as to this hereafter.

During her lifetime, Mary T. Thrash entered into a contract of lease of the land before referred to, with one Ramsey, for the purpose of mining coal. By the terms of that lease, Ramsey was to operate the mine in a businesslike manner, to remove all the merchantable coal from the lands, and to pay a royalty of 10 cents per ton for all merchantable coal. Ramsey, with the consent of Mary T. Thrash, assigned his lease to the defendant, and the royalty was reduced to 4 cents per ton. Under this lease the defendant took possession of the land, and proceeded to mine coal thereon, paying the royalty fixed by the modified lease to Mary T. Thrash. It is not entirely clear how

much coal was mined, but, as that is not a material matter, it will be given no further consideration; and, as plaintiffs withdrew all claims made in favor of the estate of Mary T. Thrash for rent, that feature of the case need not be considered. Plaintiffs, Hook and DeLong, as administrators of the estate of John Thrash, commenced this action to recover for the coal dug and mined by defendant during the time it was operating under the lease. Thereafter they amended their petition, setting forth the names of the heirs of John and Mary T. Thrash, and reciting the terms of their wills, that the real estate belonged to said heirs by reason of these wills, that the estate of John Thrash was unsettled, and a judgment existed against it in the sum of $1,400, which was a lien on the real estate, and concluding as follows: "That in order to avoid a multiplicity of suits, and in order that whatever is due to said heirs by reason of the wrongful acts of the defendants may be used in the discharge of the debts of the estate of John Thrash, deceased, said heirs have authorized and do hereby authorize the prosecution of this suit by the plaintiffs for the recovery of the amount due from said defendants, and for such purpose they have assigned and do assign to said plaintiffs, and set over, the said claim, and authorize and direct that any judgment obtained in said cause be so entered; and plaintiffs ask, and said heirs with them ask, to be made joint plaintiffs herein, to the end that all wrongful acts of the defendants to the damage of said estate and the said heirs may be fully determined." On the same day the heirs of John and Mary T. Thrash filed a petition of intervention, which, on defendant's motion, was stricken from the files. As the interveners do not appeal from this order, we need not give this matter any further attention. On the next day plaintiffs filed an amendment to their petition, in the following language to-wit: "Now come plaintiffs, leave having been given by the court, and amend the amendment filed to petition January 18, 1899, by making the appear-

ance as shown to said pleading to be an appearance for the administrators, and for the parties asking to be joined. Bolton, McCoy & Bolton and Dan. Davis, Attorney for Administrators and Interveners." Motion was made to strike this amendment because of misjoinder of parties. This motion was sustained, and plaintiffs excepted. During the progress of the trial the following record was made: "The administrators now ask that, if the court has any doubt of their right to maintain this action, the said heirs may be made parties plaintiff, to the end that this claim may not abate, but may be prosecuted to judgment on the record as it now stands. And Bolton, McCoy & Bolton and Dan. Davis, attorneys for plaintiffs, appear for said heirs of John Thrash, and ask in said cause that the said heirs be substituted plaintiffs instead of the administrators, and that the same do not abate, and that the cause be further prosecuted to judgment under the record now made in the name of the administrators, or in the name of the heirs, as the law provides. And they offer to show now that this cause of action for this trespass has been assigned to the administrators, plaintiffs herein, for the purpose of its being prosecuted as trustees for them and for the estate, to the end that the debts of said estate may be paid. And said heirs, through their attorneys, ask for judgment as prayed, and that the cause be further prosecuted by the administrators; and they hereby submit, and intend to submit, to the judgment of this court in this action, prosecuted either in the name of the administrators, as suggested, or in their name, all the rights they have in this action, to be determined by the judgment and verdict rendered herein, as if the case had been originally brought by them." Defendant pleaded in answer the making of the contract of lease with Mary T. Thrash, and the performance of the terms thereof on its part.

At the trial, plaintiffs offered to show who were the heirs of John and Mary T. Thrash; that these heirs author-

ized them to bring and prosecute the suit for them; that they assigned their claims to the administrators, and authorized them to prosecute these claims to judgment. They also offered to prove the order for the sale of the land to pay the debts of the estate of John Thrash, and that his personal estate was insufficient to pay debts. Each and all of these offers were denied, and exception duly, taken. Plaintiffs were permitted to show that defendant took coal from the premises, and that it had undermined at least three-fourths of the surface thereof. They filed a petition for an order requiring defendant to produce books and papers showing the amount of coal mined by it, and the royalties paid. As no ruling seems to have been made on this petition it will not be considered. In attempting to make out their case, plaintiffs proved that a coal mine had been opened by John Thrash many years ago, but that it had been abandoned. This mine was opened under a rock in the bed of a creek running through the land. The shaft opened by the defendant is on another piece of land, but entries are made from that shaft to and under the surface of the land in question. It also appears that some other parties opened a local mine on the Thrash land 15 years ago, and drove a 12-foot entry back about 20 feet. This opening was almost immediately abandoned, and it soon caved in, and has not been used for more than 15 years. These openings or mines, if they may be so called, were, as we understand it, about the center of the west side of the tract of land. The defendant's shaft through which it mined the coal taken from the Thrash land is east of the south line of the tract, and an entry runs along near the south line from east to west, from which rooms turn off to the north. These rooms vary from 10 to 60 rods in length, but all extend under the surface of the Thrash land. There is no evidence that the vein opened by Thrash during his lifetime is the same one that was mined by the defendant, except as it may be inferred from

the fact that there is coal under the entire tract, and that it crops out at the places where the mines were originally opened.

Defendant's motion to direct a verdict was based on the grounds: First, that plaintiffs had no capacity or authority to maintain the action; second, that under the terms of the will Mary T. Thrash had authority to lease the premises; and, third, that, as life tenant, she had implied authority to make such a lease. It will not be doubted that plaintiffs, as administrators, had no authority to sue for a trespass on the real estate theretofore owned by John Thrash. Under certain circumstances they were authorized to take possession of the real estate, and apply the rents and profits for the benefit of the persons entitled thereto. Code, section 3333. They might, also, by direction of the court, apply the profits to the payment of claims, if the personal assets were insufficient. Code, section 3334. But as administrators they had no claim for injuries done the land, and could not sue as such for trespass. They did not, it seems, take possession of the real estate under the first section of the statute cited, nor had they any order of court to apply the rents and profits under the second; and it is doubtful, to say the least, whether they could be authorized to take possession of damages accruing by reason of a trespass, and apply them to the payment of debts. They might, perhaps, have a remedy on the theory of equitable conversion; but as they do not predicate their right on such a basis, decision of the point is unnecessary. Their right, if any they have, must come from the real parties in interest, who in the absence of a will are the heirs at law, and under a will are the devisees. They allege in their petition that these heirs and devisees have assigned their claims to plaintiffs, and have authorized them to prosecute the claims and obtain judgment thereon. True, they say that they did this to avoid a multiplicity

of suits, and in order that the judgment recovered might be used in the payment of debts against the estate of John Thrash. But their purpose in so doing is not material, so long as plaintiffs held the legal title to the claim in virtue of the assignments. No attack was made on the amendment to the petition pleading these facts, and no issue of misjoinder, or of plaintiffs' capacity to sue, was tendered by the pleadings. Nevertheless the court refused to permit plaintiffs to prove the heirship of the assignors, or that they had made assignments of their claims to the plaintiffs. This was certainly erroneous. Again, to save the action from abating, plaintiffs' attorneys who represented the heirs asked that the heirs be substituted as plaintiffs before the defendant's motion to direct was filed. This, although descretionary with the court, might well have been allowed; and, while we would not reverse for this ground alone, we think it the better practice to allow such amendments or substitutions. *Taylor v. Adair,* 22 Iowa, 279. Under the allegations of the amended petition which were not attacked, plaintiffs should have been permitted to introduce their proofs; and, as there was no pleading putting in issue plaintiffs' right to sue, the first ground of the motion should have been overruled.

II. The will clearly devised but a life estate to Mary T. Thrash. True, she had the right to use the land for her support in any manner she saw fit, but she was expressly denied the right of sale. The execution of the mining lease was a sale of the property. The coal underneath the surface was a part of the real estate, and the lease thereof, in the form in which it was executed, was a transfer thereof. *Caldwell v. Fulton,* 31 Pa. St. 475; *Appeal of Duff,* Pa. Sup. (14 Atl. Rep. 364); *Railway Co. v. Sanderson,* 109, Pa. St. 585 (1 Atl. Rep. 394). We need not determine whether it passed title to unmined coal, for that question is not in the case. It surely passed title

to all that was mined, and was therefore a sale of real estate. Had there been open mines on the premises, which were being worked at the time of the death of John Thrash, there would be room for construction, and perhaps defendant's contention might be sustained. But whatever openings there may have been were utterly abandoned more than 15 years before the testator's death. At that time the land was not being used for mining purposes, and there is nothing to indicate that testator intended it should be so used by the life tenant. Moreover the will expressly negatives the idea.

III. In view of the limitations put on the express authority of the life tenant, it would seem unnecessary to consider the implied authority of such a tenant. Ordinarily a life tenant may use the premises as he sees fit, provided no injury is done the inheritance. He may work pits or mines that have already been opened, but he cannot open new ones. Those already opened he may work even to the point of exhaustion. He may sink new shafts upon mines already opened, but cannot open new veins. These rules are settled by the following, among other authorities: *Sayers v. Hoskinson,* 110 Pa. St. 473 (1 Atl. Rep. 308); *Reed's Ex'rs v. Reed,* 16 N. J. Eq. 248; *Gaines v. Mining Co.,* 33 N. J. Eq. 603; *Coal Co. v. Cox,* 39 Md. 33; *Livingston v. Reynolds,* 2 Hill, 157; *Coates v. Cheever,* 1 Cow. 474; *Crouch v. Puryear,* 1 Rand. 258. In the *Gaines Case, supra,* it is held that a life tenant has a right to use a mine for his own profit, when the owner of the fee, in his lifetime, has opened it, even though he may have discontinued work for a long period of years; but in the same case the court said that if an opened mine is abandoned before the creation of the life estate, with an executed intention to devote the land to some other use, it will be fatal to the claim of the life tenant to work the mine. Now, while two mines seem to have been opened during the life of the testator, but very little coal was taken therefrom,

and they were completely abandoned long before his death. Moreover, there is no showing that the mine opened by the lessee of the life tenant was the same vein as that previously opened by John Thrash. For these reasons, there was no implied authority in the life tenant to use the land for mining purposes, or to authorize another to do so. Something is said in argument regarding the right of Mary T. Thrash, as widow, to sell or lease the land for mining purposes. She undoubtedly had the right to an undivided one-third of the real estate as dower, but her dower was not admeasured during her lifetime; and even if she took an undivided one-third of the land in fee, as cotenant with the heirs, she had no right to lease the whole for mining purposes. Freeman Co-Tenancy, section 249a. Dower rights exist in mines already opened during the husband's lifetime, and under our statute giving the widow one-third in fee, she is entitled to all minerals found on her third after it has been admeasured. Until there has been an allotment in severalty, a co-tenant has no right to use or sell coal found under the entire tract, when the vein has not theretofore been opened. *Williamson v. Jones,* 39 W. Va. 23 (19 S. E. Rep. 436, 38 L. R. 9, 694); *Dodge v. Davis,* 85 Iowa, 77. Conceding, for the purposes of the case, that Mary T. Thrash had such an interest in the land after the death of her husband, and before assignment of dower, that she might dispose of the same, or a part thereof, by lease, she had no right to dispose of a part of the whole property; and her act in so doing did not vest in her assignee the right to mine all the coal on or under the land, under the circumstances disclosed by this record. That a widow may, in equity, sell and convey her dower interest before assignment, is settled in this state. *Huston v. Seeley,* 27 Iowa, 183; *Herr v. Herr,* 90 Iowa, 538. And a conveyance or disposition of unassigned dower has also been recognized at law. *Larkin v. McManus,* 81 Iowa, 723. But the record in this case does

not disclose such a state of facts. The defendant claims that it had a right to mine all the coal on the land, in virtue of the lease of the whole from the widow.

The case should have been submitted to the jury under proper instructions.—Reversed.

Granger, C. J., not sitting.