## RICHMOND NATURAL GAS COMPANY *v.* DAVENPORT ET AL.

[No. 5,506. Filed December 15, 1905.]

1. PLEADING. — *Complaint. — Injunction. — Gas-and-Oil Lease. —Exhibits.*—Where the owners of the fee bring a suit for injunction against the life tenant and her lessee to prevent their taking and removing oil and gas from the land, the lease so executed is not a proper exhibit to the complaint, and the absence of such does not affect the sufficiency of the complaint. p. 28.

2. ESTATES.—*Real.—Gas and Oil.—Injunction.—Waste.*—Gas and oil, not reduced to possession, are real estate, and belong to the owners of the fee who may protect same by injunction, the taking of same by the life tenant being waste. p. 30.

3. INJUNCTION.—*Cutting Timber.—Life Tenant.*—The owners of the fee may, by injunction, prevent the life tenant from cutting and removing timber from their lands. p. 30.

4. ESTATES.—*Life Tenants.—Right to Use of Gas and Oil Wells.* —Where the owner of the fee has oil and gas wells in operation and a life estate is afterwards created, the life tenant will be

entitled to the use of, or royalty from, such wells, but such tenant has no right to begin operations nor to lease to others the right to do so.  p. 31.

5.  INJUNCTION.—*Life Tenants.*—*Remaindermen.*—The fact that the oil and gas will be exhausted before remaindermen will come into possession is no reason to prevent their enjoining the life tenant from boring wells to take out the gas and oil.  p. 31.

From Huntington Circuit Court; *Joseph G. Leffler,* Special Judge.

Suit by Parker E. Davenport and others against the Richmond Natural Gas Company.  From a decree for plaintiffs, defendant appeals.  *Affirmed.*

*Robbins & Starr,* for appellant.

*Eugene H. Bundy,* for appellees.

BLACK, P. J.—The court below overruled appellant's demurrer, for want of sufficient facts, to appellees' complaint, and sustained appellees' demurrer to the appellant's answer.  In the complaint it was shown that the appellant was a corporation organized under the laws of this State for the purpose of drilling natural gas wells and of selling natural gas for fuel and lights to the people of the city of Richmond, Indiana, and other persons; that for such purpose the appellant owned, operated and maintained a pipe-line to convey and transport natural gas from its gas-wells in Henry county, Indiana, to that city; that it owned and was engaged in drilling gas-wells in Henry county, from which was obtained the natural gas which it conveyed through this pipe-line to its customers and consumers; that the appellees, on September 19, 1900, were, and they still are, the owners in fee simple of certain described land in Henry county; that on that day Cassandra Davenport had and held, and still has and holds, a life tenancy in and to that real estate, and she had not then, and had not at the commencement of this suit, any other, different or greater interest therein than as tenant thereof for and during her lifetime; that on that day there was, and there still

is, in and under that real estate, a reservoir of natural gas, constituting a part of the real estate, and of great value to the same and to the appellees as the owners of the same; that on and prior to that date the natural gas in and under this real estate had never been drilled for or brought to the surface or developed in any manner, nor had any wells been drilled thereon, nor had any experiments or explorations been made thereon for natural gas; that this condition existed at the time Cassandra Davenport acquired the life estate in the land; that on the day above mentioned, she and the appellant, without the consent of the appellees or either of them, and unlawfully and without right, entered into a written agreement or lease, wherein and whereby she, in consideration of the sum of $1, undertook and assumed to sell to the appellant all the oil and gas in and under the land above mentioned, together with the right to enter upon the land at all times for the purpose of drilling and operating for gas, oil or water, with the right to erect and maintain all necessary telephone lines, buildings and structures for that purpose, together with the right to lay, maintain and remove lines of pipe over and across the land for the conveyance and transportation of oil and gas; that pursuant to this written agreement the appellant entered upon this real estate and erected structures and placed thereon pipe, tools, machinery and appliances for drilling gas-wells, and at the time of the filing of this complaint was engaged in drilling a gas-well and placing therein pipes and appliances for taking and removing the gas lying in and under the real estate, and, if not restrained and enjoined from doing so, it would permanently occupy the real estate and take and remove therefrom the natural gas lying in and under the same, and would commit great waste and lasting and permanent injury to the real estate and to the rights and interests of the appellees therein, which can not be compensated in damages. Prayer for an injunction, etc. The written agreement mentioned in the

complaint was referred to therein as being attached thereto as an exhibit, but it does not accompany the complaint in the transcript. As the action was not founded upon the agreement, it would not be a proper exhibit, and it would not be considered if so attached, and the question as to the sufficiency of the complaint on demurrer can not be affected by the absence of an exhibit.

In the appellant's answer it was alleged that at the time Cassandra Davenport acquired the life estate in the real estate described in the complaint there was, and at the time of filing this answer there was, underlying this real estate and other real estate adjoining it, in Henry county, a deposit of natural gas which was utilized for fuel and light by the people of that county and of adjoining counties; that this underlying natural gas at all times mentioned was contained in and percolated freely through a stratum of rock known as "Trenton rock," comprising a vast reservoir in which such gas was confined under great pressure, and from which it escaped, when permitted to do so, with great force; that because of the wandering and fugitive character of the gas it had no fixed situs beneath the ground, as deposits of coal and other minerals possess, but flowed about from place to place through the whole reservoir in which it was contained; that, by reason of its nature and character, when gas-wells were drilled in any portion of the real estate under which it was so confined, and thereafter were operated, the gas was drawn to that point from the entire reservoir within which it was so confined; that at the time Cassandra Davenport acquired her life estate in the land, and at the time of the execution of the lease by her to the appellant, the whole gas territory in which that real estate was situated, except that real estate itself, was being mined and worked for natural gas by means of gas-wells; that at the time aforesaid, and continuously thereafter to the time of filing this answer, gas was and still is being drawn in large volumes and quanti-

ties, by means of said wells so located and operated, from the gas reservoir so underlying the territory and beneath the real estate described in the complaint, and was transported thence by means of iron pipes to various homes and manufacturing establishments throughout that county and the adjoining counties, to be consumed for fuel and light; that by such process the natural gas product would in a short time be all drawn out of the reservoir, and the gas field would be entirely exhausted; that Cassandra Davenport was a woman in good health, of the age of sixty-eight years, and her expectancy of life was nine years, and that long before the expiration of that period, to wit, within two years from the filing of this answer, the entire product of natural gas, by the process of mining therefor then carried on, as aforesaid, on other real estate than that described in the complaint, would be drawn out of the reservoir and from beneath all the real estate in the gas territory, including the real estate described in the complaint, and would be entirely consumed, and the gas field would be completely exhausted, and all the gas beneath that real estate would be lost to Cassandra Davenport, the life tenant, as well as to the remaindermen, the appellees; that under and pursuant to the lease referred to in the complaint the appellant had caused a gas-well to be drilled on the real estate in question, and had the same properly capped and secured to prevent the escape of gas therefrom; that, though it had not operated this well, the pressure of gas and the volume of gas therein had constantly and steadily decreased ever since the well was so drilled, solely because of the operations for gas being conducted on surrounding real estate in the gas territory as aforesaid, and the drawing of gas thereby from the reservoir and from beneath the real estate described in the complaint; that, if the appellant should be permitted to operate the gas-well so drilled, it would do so in such manner as not to injure the real estate or the gas field, but would only take gas from

the well as it would freely flow therefrom at its natural pressure under the natural law of the flowage of gas, and by this means would receive through the well a share of the gas in the reservoir and beneath the real estate in question, which was being drawn therefrom by the operations aforesaid.

It is settled by numerous decisions that the natural gas or the petroleum which may be under the surface, and not reduced to the actual possession of any person, constitutes a part of the land, and belongs to the owner thereof in such a sense that he has the exclusive right by operations upon his land to reduce such mineral substance to possession and use and enjoyment and to grant the privilege of doing so to other persons, though until so reduced to possession the mineral substance is subject to be taken by any other person, by proper operations upon his own land, and that a person in possession who has such exclusive right in particular land, as owner of the land or as lessee or grantee with the privilege of extracting such minerals, may by injunction prevent operations for such purpose by others who have not rightfully acquired the privilege from the owner of the land in fee. The taking of these minerals by a stranger by means of wells made without right for such purpose constitutes a trespass, damages for which can not be definitely measured. And the taking by one lawfully in possession of the surface, with right to enjoy the income and profits, but not being the owner of the fee and not having received from such owner the privilege so to take the minerals—that is, by a tenant of the land for years or for life—constitutes waste.

Injunction will lie to prevent one rightfully in possession of land as tenant for life from cutting and removing valuable timber growing thereon at the suit of the owner of the estate in fee simple. *Robertson* v. *Meadors* (1880), 73 Ind. 43. See, also, *Indianapolis Nat. Gas Co.* v. *Kibbey* (1893), 135 Ind. 357; *American Steel, etc., Co.* v. *Tate* (1904), 33 Ind. App. 504.

Richmond Nat. Gas Co. *v.* Davenport—37 Ind. App. 25.

Where oil or gas has been taken from land by means of wells by the owner of the fee, or he has by his sufficient contract given to another the right so to take it, and 4. thereafter the possession of the land devolves upon a tenant for life, such tenant may enjoy the use of such wells or the royalties therefrom during such tenancy as profits and income from the land in the condition in which it comes to the life tenant. *Andrews* v. *Andrews* (1903), 31 Ind. App. 189; *Priddy* v. *Griffith* (1894), 150 Ill. 560, 37 N. E. 999, 41 Am. St. 397.

But where no operations for oil or gas have been carried on by the owner of the fee or his grantee or lessee for such use, and he has not conveyed such right by lease or grant during his ownership of the fee, a tenant of the land for life has no right to operate for oil or gas, or by lease or grant give authority to another to do so. *Marshall* v. *Mellon* (1897), 179 Pa. St. 371, 36 Atl. 201, 35 L. R. A. 816, 57 Am. St. 601. See, also, *Blakley* v. *Marshall* (1896), 174 Pa. St. 425, 34 Atl. 564; *Williamson* v. *Jones* (1897), 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. 891; *Westmoreland Coal Co.'s Appeal* (1877), 85 Pa. St. 344; *Appeal of Stoughton* (1878), 88 Pa. St. 198; *Gerkins* v. *Kentucky Salt Co.* (1897), 100 Ky. 734, 39 S. W. 444, 66 Am. St. 370; *Hook* v. *Garfield Coal Co.* (1900), 112 Iowa 210, 83 N. W. 963.

The fact that possibly, by the operations upon neighboring lands, all the gas will be taken before the remaindermen come into possession, can not affect the right of the 5. remaindermen to prevent the taking by the lessee or grantee of the life tenant. That such lessee or grantee will not derive any benefit from a grant or lease which the life tenant had no right to make can not be regarded as a hardship to any person. The remedy of the owners in fee is suggested by the peculiar injury threatened to their estate of inheritance. The question whether a state of facts might exist in such a case whereby the remainder-

men would be estopped to question the right of the lessee or grantee of the tenant for life to proceed to take and utilize the gas need not be discussed, as no such question arises under the averments of the pleadings before us.

Judgment affirmed.