## FAIRBANKS ET AL. *v.* WARRUM ET AL.

[No. 8,234.   Filed April 24, 1914.   Mandate Modified May 22, 1914.]

1. APPEAL.—*Record.—Evidence.—Filing Bill of Exceptions.*—To bring the evidence into the record, it is necessary that the bill of exceptions containing it should be properly filed after being signed by the judge, and the fact of filing must appear either by an entry of record or by the certificate of the clerk.   p. 342.

2. APPEAL.—*Record.—Bill of Exceptions.—Certificate of Clerk.*—Where the transcript showed no entry of the filing of the bill of exceptions, and the clerk's certificate merely showed the filing of the longhand manuscript of the evidence, without any reference to the filing of the bill of exceptions after the evidence had been incorporated into it, the evidence was not in the record. p. 342.

3. APPEAL.— *Questions Reviewable.— Objections to Evidence. — Record.*—Where the bill of exceptions containing the evidence is not properly in the record, questions relating to the exclusion of evidence are not presented.   p. 343.

4. APPEAL.—*Reserving Questions for Review.—Exceptions.*—Exceptions to the giving of instructions stating "to the giving of which the defendants and each of them at the time object and except", and to the refusal of instructions specifying the instructions refused and stating that "to the refusal to give which the defendants and each of them at the time object and except," were in each instance in gross and not separate as to each instruction given and refused; hence no available error was presented on the instructions given, if any was good, nor on the refusal, if any was properly refused.   p. 343.

5. APPEAL.— *Objections to Instructions.— Absence of Evidence from Record.*—Where the evidence is not in the record there can be no reversal on the instructions, if they are correct on any supposable state of facts within the issues.   p. 344.

6. APPEAL.—*Waiver of Error.—Failure to Urge.*—Where the instructions given by the trial court were excepted to in gross, and one of the instructions thus excepted to is not set out in appellant's brief among the instructions complained of, it will be presumed that such instruction is conceded to be correct, and hence error in any of the others is not available.   p. 344.

7. APPEAL.—*Presumptions in Aid of Judgment.—Omissions from Record.*—Where the evidence is not in the record it will be presumed that instructions refused were not applicable to the evidence.   p. 344.

8. PLEADING.— *Answer.— Joint Answer.— Sufficiency.*— A joint an-
swer is insufficient as to all joining therein if insufficient as to
any one. p. 344.

9. APPEAL.—*Reserving Questions for Review.—Exceptions.*—No
question is presented on the overruling of a demurrer to a joint
answer, where the exception to such ruling, as well as the assign-
ment of error on appeal, was separate as to each defendant.
p. 345.

10. TRIAL.—*Verdict.—Insufficient Complaint.*—Where a verdict is
based on more than one paragraph of complaint, it is contrary to
law if either paragraph is insufficient to state a cause of action.
pp. 345, 351.

11. MINES AND MINERALS.—*Oil and Gas Leases.—Action for
Rentals.—Complaint.—Presumptions.*—In an action by the grantee
of a portion of a tract of land subject to an oil and gas lease
to recover the stipulated rental for each well drilled, it will be
presumed, in the absence of any allegation to the contrary that
the wells drilled were upon the land retained by the grantor.
p. 345.

12. MINES AND MINERALS.—*Ownership of Natural Gas.*—An owner
of the fee has a qualified ownership of the gas beneath the sur-
face of his land, with the right to reduce it to possession by the
sinking of wells, whereupon his title to the gas so taken becomes
absolute while his ownership to that under the surface ceases
upon its escape to the lands of an adjoining proprietor, and the
latter in such event acquires such qualified ownership. p. 346.

13. MINES AND MINERALS.—*Natural Gas.—Character of Property.*
—Natural gas, when reduced to possession, becomes personal
property of the landowner, even though remotely coming from
beneath the land of an adjoining owner. p. 346.

14. MINES AND MINERALS.—*Gas Leases.—Effect of Conveyance.*—
Where the owner of a tract of land executed a gas lease thereon,
providing for a stipulated royalty to the lessor and an annual
rental for each completed well and an acreage rental until the
completion of a well, and thereafter conveyed a portion of the
tract, the grantee had no interest in the gas produced through
a well drilled on the land retained by the grantor, even though
some part thereof flowed immediately or remotely from beneath
the surface of the land conveyed, and, having no interest in the
gas, was not entitled to any part of the rent payable on account
of the well, since such grantee acquired only a qualified owner-
ship of the gas under his land subject to be defeated if it flowed
beneath the surface of the lands of another. p. 347.

15. APPEAL.—*Waiver of Error.—Failure to Urge.—Right to Disre-
gard Waiver.*—While the insufficiency of a paragraph of com-
plaint is deemed waived where defendant fails to specifically

challenge it, and while the record will not be searched for purposes of reversal, where an examination of such insufficient paragraph is essential to a comprehension of the cause, the court is not bound to ignore its infirmities for the purpose of affirmance, where to do so might mislead the bench and bar.   p. 349.

16.   LIFE ESTATES. — *Gas Leases.* — *Effect of Conveyance.* —The grantee for life of a portion of land covered by a gas lease providing for rentals or royalties to be paid for each well drilled, would be entitled to receive the well rentals thereafter accruing for wells existing at the time on the land conveyed to him, or thereafter drilled thereon.   p. 351.

17.   LIFE ESTATES.—*Gas Leases.*—*Right to Rental.*—The grantee for life of land on which there was no gas well, and which was covered by a lease providing for payment of an acreage rental until such a well should be completed, was entitled to receive and collect such rental accruing subsequent to the conveyance to him.   p. 351.

18.   APPEAL.— *Disposition of Cause.* — *Conditional Affirmance.*— Where it appears that the verdict was based on two paragaphs of complaint, one of which was insufficient to state a cause of action, and the nature of the cause is such that it can be definitely ascertained how much of the amount awarded was upon the sufficient paragraph, justice is best subserved by an affirmance on condition that the amount of the verdict based on the insufficient paragraph be remitted, with a reversal as the alternative.   p. 352.

From Rush Circuit Court; *Alonzo Blair,* Judge.

Action by Richard H. Warrum and another against Crawford Fairbanks and another.   From a judgment for plaintiffs, the defendants appeal.   *Affirmed.*

*Joseph E. Bell, John J. Kelly* and *Smith, Cambern & Smith,* for appellants.

*Tindall & Tindall,* for appellees.

CALDWELL, J.—In 1889 Noble Warrum was the owner of two tracts of land in Hancock County, containing 15 acres and 353 acres respectively.   On August 7, of said year, Warrum executed to appellant Fairbanks a gas and oil lease, covering the first tract, and on July 10 of the same year, he executed to said appellant a like lease covering the second tract.   On October 28, 1893, Warrum, by deed of

general warranty, conveyed the first tract and 58 acres off
the west side of the second tract to the appellees, as husband
and wife, for and during the period of their natural lives
and the natural life of the survivor of them, with remainder
in fee to their children. The deed was duly recorded on
January 19, 1894. At some time subsequent to the exe-
cution of the leases, Fairbanks assigned them to his coappel-
lant the Southern Indiana Gas Company. The leases in
their substantial provisions are identical. Each granted to
Fairbanks and his assigns the exclusive right to operate on
the lands therein described for the production of water,
oil and natural gas, and to tank and transport petroleum
oil, and also the exclusive right to lay pipe lines on said
lands and along the adjacent highways. There is a further
provision as follows:

"Said Fairbanks agrees that he or his assigns will
furnish free of charge during the continuance of this
contract natural gas for lighting and heating one resi-
dence on said place, for the cooking of food for the
owner's stock, to be delivered at the nearest practicable
point on his main in use or at his wells, as long as gas
is there obtained in paying quantities for piping, accord-
ing to the judgment of said Fairbanks or assigns, and
to pay at the rate of one hundred dollars per year on
each well completed. It is further agreed that until
said Fairbanks or assigns shall complete a well on the
described premises, he or his assigns will pay to the
first party yearly in advance on demand, at the Citizens
Bank in the city of Greenfield, Indiana, a rental of fifty
cents per acre on said premises, and a failure to pay said
rental shall render this contract null and void."

It is provided that the lessor shall have one-eighth of
the oil produced at the well. It is further provided:

"This contract to be in force for the term of twenty
years, and the said Fairbanks or assigns shall have the
right at the expiration of said time at his option to con-
tinue the same for three additional terms on the same
conditions, said option to be exercised by said Fair-
banks or assigns at the end of each term."

The complaint is in two paragraphs. Among other matters, it is alleged in the first paragraph in substance that said Fairbanks entered into the possession of the leased premises under said 15-acre lease, but that neither he nor his assigns drilled a well on said premises; that Fairbanks paid to Noble Warrum the acreage rentals under said lease until the year 1893; that he assigned. said lease to his coappellant on the ...... day of ......; that the acreage rentals that accrued under said lease after the execution of said deed to appellees on October 28, 1893, were not paid; that said lease expired by limitation at the end of said twenty-year term on August 7, 1909. By this paragraph appellees, as owners of said life estate in said 15-acre tract, seek to recover fifteen annual instalments of acreage rentals of $7.50 each, commencing with the instalment alleged to have been payable August 7, 1894.

The second paragraph alleges in substance that Fairbanks having entered into possession of said 353-acre tract under said lease, which lease was duly recorded August 17, 1889, drilled and completed a gas well thereon on the ...... day of .........., 1890, which well produced large quantities of gas, and that he used and transported gas from said well in paying quantities until the ...... day of .........., 1899, and that he paid to said Noble Warrum the specified well rental on said well up to the said time of the execution of said deed to appellees on October 28, 1893; that on the ...... day of .........., Fairbanks assigned said lease and all his rights, title and interest under it to his coappellant; that said lease expired by limitation on July 10, 1909, being at the end of said twenty-year term. It is not alleged that said well was on that part of said tract so conveyed to' appellees. Other facts are alleged from which it appears that appellees, as such life tenants, claim that they are entitled to recover such a proportionate part of said well rentals accruing after the execution of said deed as said 58-acre tract bears to said 353-acre tract. It is alleged that com-

mencing with the instalment accruing July 10, 1894, there were fifteen of such instalments payable within the subsequent life of said lease, of which it is alleged that appellees' said proportionate share is $300, for which judgment is asked.

Appellants jointly answered in twelve paragraphs. Appellees' demurrer was sustained to each paragraph of answer, except the first which was a general denial, and the ninth and tenth, which pleaded payment. Appellees replied in general denial to said ninth and tenth paragraphs of answer. Trial by jury, resulting in verdict and judgment in favor of appellees for $340. The errors assigned and not waived relate to the sustaining of the demurrers to said paragraphs of answer, and to the overruling of the motion for a new trial. Included in the motion for a new trial, as grounds thereof, are certain assignments relating to the giving and refusing of instructions, and to the exclusion of certain offered evidence. It is assigned also that the amount of recovery is erroneous, being too large, and that the verdict is not sustained by sufficient evidence, and that it is contrary to law. Such being the nature of the motion for a new trial, it becomes necessary for us to consider certain preliminary questions urged upon our attention, and first as to whether the evidence is in the record.

To bring the evidence into the record, it is necessary that the bill of exceptions containing it be properly filed after it has been signed by the judge. The fact of such

1. filing must be made to appear otherwise than by statements contained in the bill (*Miller* v. *Evansville, etc., R. Co.* [1896], 143 Ind. 570, 41 N. E. 801, 42 N. E. 806; *Hoffman* v. *Isler* [1912], 49 Ind. App. 284, 97 N. E. 188); that the bill was filed in the cause and the date of filing, must be shown either by an entry of record or by the certificate of the clerk. Here the transcript does not show such

2. an entry. The clerk, by his certificate shows the filing of the longhand manuscript of the evidence by

the reporter, but it contains no reference to the filing of the bill after such manuscript was incorporated into it. Under such circumstances, the evidence is not in the record. The clerk's certificate is practically identical with the certificate set out in the first case cited below. *Hoffman* v. *Isler, supra; Daugherty* v. *Reveal* (1913), 54 Ind. App. 71, 102 N. E. 381; *Howe* v. *White* (1904), 162 Ind. 74, 69 N. E. 684; *Miller* v. *Evansville, etc., R. Co., supra.* Questions relating to the exclusion of offered testimony are therefore not presented. *Taylor* v. *Schradsky* (1912), 178 Ind. 217, 97 N. E. 790.

The court at the request of appellees gave eight instructions, to the giving of which appellants excepted in the following language: "To the giving of which the defendants and each of them at the time object and except." Such exception is in gross, or to such instructions as a whole. Appellants tendered to the court eleven instructions, with the request that they be given as a part of the court's charge. The court gave the third and fourth and refused the others. Appellants' exception to such refusal is as follows: "And the court now refuses to give defendants' instructions numbered 1, 2, 5, 6, 7, 8, 9, 10, 11, to the refusing to give which the defendants and each of them at the time object and except." Such exception also is in gross rather than to the refusal to give each instruction refused. Under such circumstances, available error cannot be predicated on the giving of said instructions, unless all so given and excepted to were erroneous, or on the refusal of such instructions so requested by appellants, if any one of them was correctly refused. *Steele* v. *Michigan Buggy Co.* (1912), 50 Ind. App. 635, 95 N. E. 435; *State* v. *Ray* (1897), 146 Ind. 500, 45 N. E. 693; *Ohio, etc., R. Co.* v. *McCartney* (1890), 121 Ind. 385, 23 N. E. 258; *Rastetter* v. *Reynolds* (1903), 160 Ind. 133, 66 N. E. 612; *Kluse* v. *Sparks* (1894), 10 Ind. App. 444, 453, 36 N. E. 914, 37 N. E. 1047; *Taylor* v. *Schradsky, supra; Musgrave* v. *State*

(1892), 133 Ind. 297, 313, 32 N. E. 885; *Jones* v. *State* (1903), 160 Ind. 537, 67 N. E. 264.

As the evidence is not in the record, the judgment cannot be reversed on account of said instructions given, if they would have been correct under any supposable state

5. of facts within the issues. *Baltimore, etc., R. Co.* v. *Rowan* (1885), 104 Ind. 88, 3 N. E. 627. Moreover, by reason of the nature of the exception to instructions given, as above outlined, the same conclusion follows, if any one of said instructions is presumably correct under the principle last above announced. It is not seriously

6. contended that all said instructions so given and excepted to are erroneous. In fact, one of said instructions, being the one to which the court assigned the No. 11 is not even included among those of which complaint is made, as set out in appellants' brief. The presumption will therefore be indulged that said instruction is conceded to be correct, and there is, therefore, no available error in instructions given. *Hatfield* v. *Chenowith* (1900), 24 Ind. App. 343, 349, 56 N. E. 51. As to said instructions refused, we have already developed the principle that if any one of them was correctly refused, appellants' exception in gross presents no question. Where, as here, however, the

7. evidence is not in the record, it is our duty to presume in favor of the ruling of the trial court and to that end to assume that all said instructions were correctly refused, because they were not applicable to the case made by the evidence. *Mace* v. *Clark* (1908), 42 Ind. App. 506, 85 N. E. 1049; *South Chicago City R. Co.* v. *Zerler* (1903), 31 Ind. App. 488, 65 N. E. 599; *DeHart* v. *Board, etc.* (1896), 143 Ind. 363, 41 N. E. 825.

We have indicated that the court sustained appellees' demurrer to certain paragraphs of answer. Each of these paragraphs was filed jointly by appellants, and was

8. their joint answer. In reserving their exceptions to such rulings, the appellants each excepted to the rul-

ing on the demurrrer to each paragraph. The assignment of errors follows the exceptions. Since appellants filed said answers jointly, if any one paragraph thereof was insufficient as to either appellant, it was insufficient as to both. *Black* v. *Richards* (1884), 95 Ind. 184, 186; *Ward* v. *Bennett* (1863), 20 Ind. 440; *Brownsfield* v. *Weicht* (1857), 9 Ind. 394; 1 Ency. Pl. and Pr. 861. Such being the nature of the answers, the exceptions reserved and errors assigned do not apply accurately to the rulings complained of, and, therefore, present no question. The ruling was to the effect that the answers did not state facts sufficient to constitute a joint defense, while the exceptions and assignment of errors seek to question the individual effect of such rulings. *Whitesell* v. *Strickler* (1907), 167 Ind. 602, 609, 78 N. E. 845, 119 Am. St. 524; *Harter* v. *Parsons* (1896), 14 Ind. App. 331, 42 N. E. 1025; *Green* v. *Heaston* (1900), 154 Ind. 127, 56 N. E. 87; *Stout* v. *Duncan* (1882), 87 Ind. 383, 387; *Orton* v. *Tilden* (1887), 110 Ind. 131, 10 N. E. 936; *Morey* v. *Terre Haute, etc., Light Co.* (1911), 47 Ind. App. 16, 93 N. E. 710.

Appellants assign in their motion for a new trial, as one of the grounds therefor, that the verdict of the jury is contrary to law. The amount of the verdict indicates that it is based on both paragraphs of the complaint. This being true, if either paragraph fails to state a cause of action, the verdict is contrary to law. *Cincinnati, etc., R. Co.* v. *Darling* (1892), 130 Ind. 376, 381, 30 N. E. 416; *Cleveland, etc., R. Co.* v. *Perkins* (1908), 171 Ind. 307, 316, 86 N. E. 405; *Baltimore, etc., R. Co.* v. *Jones* (1902), 158 Ind. 87, 62 N. E. 994; *Evansville, etc., Packet Co.* v. *Wildman* (1878), 63 Ind. 370; *Wolf* v. *Scofield* (1871), 38 Ind. 175. As we have said, the second paragraph of complaint alleges in substance that Noble Warrum, as the owner in fee of said 353-acre tract executed to Fairbanks in 1889 a gas and oil lease thereon, and that Fairbanks in 1890 drilled on the tract a gas well, which

produced gas in paying quantities, and which gas Fairbanks and his assigns transported and used under the terms of the lease until sometime in 1899; that in 1893 appellees, by conveyance from Noble Warrum, became and continued the owners of the life estate in the 58-acre tract off the west side of the 353-acre tract. As indicated, in the absence of an allegation to the contrary, it will be presumed that the gas well was on the residue of the tract rather than on said 58 acres. The theory of said paragraph is that by reason of said facts, appellees, as such life tenants, became entitled to such a proportionate part of the well rentals accruing under said lease, after the creation of said life estate, as the 58-acre tract is of the entire tract, or something more than one-sixth thereof.

We proceed to determine whether this paragraph of complaint states a cause of action. Noble Warrum at the time of the execution of the lease was, as the owner of the fee, the owner of everything that went to make up the realty. The natural gas beneath the surface was a part of the realty, and, therefore, Noble Warrum was the owner of such gas. By reason of the fugitive character of natural gas, however, he was such owner only in a qualified sense. As long as such substance remained beneath the surface of his land, he continued to be such owner, until in some manner he parted with the title thereto. But, if by its natural tendency to flow, it should escape to the lands of an adjoining proprietor, such ownership would thereby cease. Such qualified ownership authorized him to reduce such gas to possession by sinking wells on his land and thus permitting such substance, by natural means or its own ordinary pressure, to flow to the surface and into any receptacle that he might have prepared to receive it. Such gas thus reduced to possession through any such well, and regardless of whether it came from beneath his own land or remotely from the lands of an adjoining proprietor, would become personal property,

the absolute ownership of which would be in said Noble Warrum. From a practical standpoint, therefore, Noble Warrum was the owner of such gas while it was beneath the surface of his own land, only in the sense that he had the exclusive right by operations on such land, to explore for it and reduce it to possession and to a consequent absolute ownership. In the place of reducing such gas to possession, such qualified ownership authorized him to empower others to do so. The lease which we are considering did not by its terms convey to the lessee and his assigns any title to the gas under said tract, but rather created in such lessee and his assigns the right to reduce it to possession by means aforesaid. When so reduced to possession, it became personal property, the absolute title to which was in said lessee or assigns, subject to the terms of the lease. Such right extended to all the gas under the entire tract. Under such lease, the lessee and assigns were authorized to bore for gas from any part of the surface of said tract. Until such gas should be so reduced to possession by the lessee or assigns, the qualified ownership remained in Noble Warrum, subject to lessee's right to explore for it and reduce it to possession. That right existed only in the lessee and his assigns. There remained in Noble Warrum, as an incident to the ownership of the land, only the right to receive acreage and well rentals under the leases. After a

14. well had been drilled, and while it was producing gas, Noble Warrum executed the warranty deed, by which he conveyed to appellees the 58 acres of land for and during the period of their natural lives, with remainder in fee to their children. By said deed, Noble Warrum parted with the entire title to said 58 acres, including everything that constituted the realty. Said deed, therefore, conveyed to the grantees thereof such qualified ownership in the gas under the 58 acres. Said conveyance, however, was subject to the right theretofore created in said lessee and his assigns to reduce such gas to possession by drilling from any

point on the surface of the entire tract, and it carried with it to appellees the right to receive acreage and well rentals accruing on account of the lands included in said conveyance. Said deed did not affect the residue of the tract or any part of the realty thereof, and consequently did not affect the qualified ownership in and to the gas under the residue of the tract. Such qualified ownership remained in Noble Warrum. Had he not therefore executed said lease, Noble Warrum would have had a right to drill on the residue of the tract for gas, and to possess himself of all the gas that flowed by natural means from any such well, and, regardless of where the gas came from. If it flowed from beneath the lands of an adjoining proprietor or from beneath the 58-acre tract and to the surface through such well, such gas would thereby become the absolute property of Noble Warrum. What we have said results from the fact of such qualified ownership to the effect that the owner of the surface owns the gas beneath such surface only while it remains there. When it flows to beneath the surface of the lands of another, such qualified ownership is then in such other. Such right to explore and reduce to possession so existing in Noble Warrum was, as we have said, transferred exclusively to the lessee and assigns by the lease, and as to said entire tract. It follows that appellees had no interest in the gas produced through the well drilled on the residue of said tract, even though said gas or some part of it flowed immediately or remotely from beneath the surface of the 58-acre tract. Having no interest in the gas so produced, appellees were not entitled to any part of the well rental payable on account of the producing well on the residue of the tract. It, therefore, follows that the second paragraph of complaint does not state a cause of action. We are sustained in our conclusion by the following: *Andrews* v. *Andrews* (1903), 31 Ind. App. 189, 67 N. E. 461; *Richmond Nat. Gas Co.* v. *Davenport* (1905), 37 Ind. App. 25, 76 N. E. 525; *Manufacturers Gas, etc., Co.* v. *Indiana Nat. Gas, etc., Co.* (1900),

155 Ind. 461, 57 N. E. 912, 50 L. R. A. 768; *Rupel* v. *Ohio Oil Co.* (1911), 176 Ind. 4, 95 N. E. 225, Ann. Cas. 1913 E 836; *Heller* v. *Dailey* (1902), 28 Ind. App. 555, 63 N. E. 490; *Campbell* v. *Smith* (1913), 180 Ind. 159, 101 N. E. 89; *Northwestern, etc., Gas Co.* v. *Ullery* (1903), 68 Ohio St. 259, 67 N. E. 494; *New American Oil, etc., Co.* v. *Troyer* (1906), 166 Ind. 402, 76 N. E. 253, 77 N. E. 739.

We are aware that *Wettengel* v. *Gormley* (1898), 184 Pa. St. 354, 39 Atl. 57, and *Wettengel* v. *Gormley* (1894), 160 Pa. St. 559, 28 Atl. 934, 40 Am. St. 733, are out of harmony with the conclusion at which we have arrived, but we are not content to follow that case. The supreme court of Ohio, in *Northwestern, etc., Gas Co.* v. *Ullery, supra,* says in criticism of the Pennsylvania case, the following: "We have several times had occasion to carefully examine and consider that case and it has always failed to receive the approval of our judgment." The syllabus to the Ohio case, as prepared by the court, is a fair statement of the decision, and is as follows: "Where an oil and gas lease is made by one party to another covering two or more separate tracts of land, and is made to extend to the heirs and assigns of the parties, and different persons become the owners of such different tracts, each owner is entitled to the oil and gas produced on his tract, and to the royalty and rental arising from such tract." See, also, *Rymer* v. *South Penn Oil Co.* (1904), 54 W. Va. 530, 46 S. E. 559.

Appellants do not specifically challenge either paragraph of complaint. Under such circumstances it is within the province of this court to treat the insufficiency of the second paragraph as waived. To such effect is a long line of decisions both of the Supreme Court and also of this court. However, as we have said, appellants have included in the motion for a new trial, among the grounds therefor, that the verdict is excessive and that it is contrary to law. Both these grounds are discussed in appellants' brief, but the insufficiency of the second paragraph

of complaint is not urged in support of either. By repeated decisions it has been established as the policy of the Supreme Court and also of this court. that the record will not be searched for purposes of reversal. Here, however, said paragraph of complaint is properly copied into appellants' brief, and is before us. An examination of said paragraph is necessary to a comprehension of the case. Having examined it we are not required to ignore its infirmities, although a knowledge thereof so acquired might drive us to a reversal. As we have indicated, the supreme courts of two sister states occupy diametrically opposite positions on the question of whether such a paragraph states a cause of action. Were we to exercise our prerogative as a court and treat the insufficiency of said paragraph as waived, the bench and bar of the State might thereby be influenced to believe that we were in accord with the supreme court of Pennsylvania, while in fact we cannot accept as sound the decisions of that court on the question under consideration. We cannot feel justified in taking a course from which uncertainties would be sure to arise and trial courts might be led into error. As applicable to the question of our right to consider the sufficiency of said paragraph, the Supreme Court under circumstances similar to those presented here, said, in *Big Creek Stone Co.* v. *Seward* (1896), 144 Ind. 205, 210, 42 N. E. 464, 43 N. E. 5: "If the court were limited to the arguments and reasoning of counsel in its decision of cases, to the exclusion of its own observations, many cases would lead us far from what we understand to be the true object of the court." The following are applicable: *Big Creek Stone Co.* v. *Seward, supra; Cleveland, etc., R. Co.* v. *Moore* (1908), 170 Ind. 328, 364, 82 N. E. 52, 84 N. E. 540; *Scott* v. *City of Laporte* (1904), 162 Ind. 34, 51, 68 N. E. 278, 69 N. E. 675; *State* v. *Board, etc.* (1906), 167 Ind. 276, 288, 78 N. E. 1016; *Wilson* v. *State* (1901), 156 Ind. 631, 636, 59 N. E. 380, 60 N. E. 1086;

*Travelers Ins. Co.* v. *Prairie School Tp.* (1898), 151 Ind. 36, 41, 49 N. E. 1, 51 N. E. 100; *Cincinnati, etc., R. Co.* v. *Darling, supra.* As indicated, the second paragraph is insufficient. Its other allegations remaining, an averment that said well was drilled on the 58-acre tract, and that it was operated thereon is necessary to the sufficiency of such paragraph. If the verdict rests in part on such paragraph, it is contrary to law as we have said. "A verdict is contrary to law when it is contrary to the principles of law as applied to the facts which the jury is called upon to try; when it is contrary to the law which should govern the cause." *Equitable, etc., Ins. Co.* v. *Stout* (1893). 135 Ind. 444, 457, 33 N. E. 623.

It is not necessary for us in this case to determine the rights of the life tenants under said lease. However, we have no doubt that had there been in operation on the 58-acre tract, at the time of the execution of the deed, a producing gas well, or had such a well been thereafter drilled, they would have been entitled to collect and receive the well rentals or royalties therefrom thereafter accruing. *Richmond Nat. Gas Co.* v. *Davenport* (1905), 37 Ind. App. 25, 76 N. E. 525; *Andrews* v. *Andrews* (1903), 31 Ind. App. 189, 194, 67 N. E. 461; *Koen* v. *Bartlett* (1895), 41 W. Va. 559, 23 S. E. 664, 31 L. R. A. 128, 56 Am. St. 884; *Deffenbaugh* v. *Hess* (1909), 225 Pa. St. 638, 74 Atl. 608, 36 L. R. A. (N. S.) 1099; *Ohio Oil Co.* v. *Daughetee* (1909), 240 Ill. 361, 88 N. E. 818, 36 L. R. A. (N. S.) 1108. By the terms of the 15-acre lease, Fairbanks and assigns agreed to pay acreage rental at the rate of 50 cents per acre annually, until a well should be completed on said tract. No well was completed thereon, and as a consequence Fairbanks and assigns were obligated by the terms of such lease to pay such rental until the expiration of the lease. Appellees or such life tenants were entitled to collect and receive such acreage

rental accruing after the execution of said deed creating said life estate. *Andrews* v. *Andrews, supra; Richmond Nat. Gas Co.* v. *Davenport, supra.*

It appears from an instruction given at the request of appellees and to which appellants make no objection, that the case was tried below on the theory that appellees were entitled to interest on any amount found due them, counting from the beginning of the action to the trial, or practically six months. Adopting such theory, and allowing such interest, appellees could not have recovered on the first paragraph more than $115.87. The amount of the verdict and judgment is $340. It thus appears that at least $224.13 thereof rests on the second paragraph, and that the verdict is not only excessive, but also contrary to law. Ordinarily such a condition of the record would call for a reversal. Here, however, giving to appellees the full benefit of the verdict to the extent that they may have been entitled to a verdict based on the first paragraph and under the evidence which, as we have said, is not in the record, the excess can be estimated with reasonable certainty. Under such circumstances it is more in harmony with justice to permit appellees, at their election, to remit from the verdict, with a reversal as the alternative. *Packers Fertilizer Assn.* v. *Harris* (1908), 42 Ind. App. 240, 85 N. E. 375; *Chicago, etc., R. Co.* v. *Brown* (1901), 157 Ind. 544, 60 N. E. 346; *Stair* v. *Bishop* (1889), 121 Ind. 273, 23 N. E. 144; *Langenberg* v. *Decker* (1892), 131 Ind. 471, 31 N. E. 190, 16 L. R. A. 108; *Rogers* v. *State, ex rel.* (1884), 99 Ind. 218; *Bauer* v. *Oldendorf* (1895), 12 Ind. App. 397, 40 N. E. 544; *Cleveland, etc., R. Co.* v. *Beckett* (1895), 11 Ind. App. 547, 39 N. E. 429; *Burdict* v. *Missouri Pac. R. Co.* (1894), 26 L. R. A. 384, note; Elliott, App. Proc. §§541, 542; 3 Cyc. 435, 436; 18 Ency. Pl. and Pr. 136.

It is therefore ordered that if within twenty days appellees shall file in this court a remittitur in the sum of $224.13 to be effective as of the date of the judgment below,

the judgment will be affirmed for the residue in the sum of $115.87, with costs below and in this court against appellants; otherwise the judgment will be reversed at the cost of appellees, with instructions to sustain the motion for a new trial and with permission to reform the issues.

PER CURIAM.—Since the decision of this case by this court, and within the time fixed in the opinion handed down April 24, 1914, conditionally affirming the judgment of the lower court, it has been made to appear to the satisfaction of this court that the condition on which said judgment was to be affirmed, to wit: That appellees should file in this court a remittitur in the sum of $224.13, to be effective as of the date of the judgment below, has been fully complied with. It is therefore, ordered that the mandate heretofore made and entered by this court in said cause be, and it is hereby modified in that the judgment of the court below in the sum of $115.87 is now unconditionally affirmed, with the costs against appellants.

NOTE.—Reported in 104 N. E. 983. As to rights of owner of surface land as against owner of underlying minerals, see 135 Am. St. 131. As to the nature of property in mineral, oil or gas, see 25 L. R. A. 222. As to the rights of a life tenant as to oil and gas, see 36 L. R. A. (N. S.) 1108. For a discussion of petroleum and natural gas as minerals, see 20 Ann. Cas. 937; Ann Cas. 1913 B 1214. See, also, under (1, 2) 2 Cyc. 1041; (3) 3 Cyc. 165; (4) 38 Cyc. 1796, 1803; (5) 3 Cyc. 169; (6) 3 Cyc. 388; (7) 3 Cyc. 303; (8) 31 Cyc. 138; (10) 38 Cyc. 1888; (11) 27 Cyc. 716; (12) 27 Cyc. 628; (13, 14) 27 Cyc. 628; (15) 2 Cyc. 677; (16, 17) 27 Cyc. 743; (18) 3 Cyc. 422.