No. 39,907

Fred J. Hoffman, Anna Hoffman, Lena Kemke, Fred W. Kemke, Minnie Goff and Dorothy Goff, *Appellants,* v. Sohio Petroleum Co., Inc.; Inez B. Janzen; Petroleum, Inc.; Adolph Beren, I. H. Beren, H. H. Beren, Co-Partners, d/b/a Okmar Oil Co.; Elda Carol Janzen Perkins; Edwin Janzen; Melvin R. Janzen; Thelbert Janzen; R. H. Garvey; William W. Garvey; James S. Garvey; Olive W. Garvey; Jean K. Garvey; Olivia G. Lincoln; Ruth G. Cochener, Executrix of the Estate of R. L. Cochener, Deceased; Ruth G. Cochener; Shirley F. Garvey; Eve H. Jager; J. T. Ross; W. D. Ferguson; Albert Frahm; C. H. Chalmers and John T. Borton, Partners; David Jackman, Jr.; The El Dorado Refining Company, Inc.; T. A. Helling; Garvey Drilling Company, *Appellees.*

(292 P. 2d 1107)

Opinion filed January 28, 1956.

*Horace A. Santry,* of Salina, argued the cause, and *John I. Young,* of Salina, was with him on the briefs for the appellants.

*George D. Miner,* of Ellsworth, argued the cause, and *Paul L. Aylward,* of Ellsworth, was with him on the briefs for Inez B. Janzen; Elda Carol Janzen Perkins; Edwin Janzen; Melvin R. Janzen; and Thelbert Janzen, Appellees.

*K. W. Pringle, Jr.,* of Wichita, argued the cause, and *George B. Collins, Oliver H. Hughes, Robert Martin* and *W. F. Schell,* all of Wichita, were with him on the briefs for Sohio Petroleum Co., Inc.; Petroleum, Inc.; R. H. Garvey; William W. Garvey; James S. Garvey; Olive W. Garvey; Jean K. Garvey; Olivia G. Lincoln; Ruth G. Cochener, Executrix of the Estate of R. L. Cochener, Deceased; Ruth G. Cochener; Shirley F. Garvey; Eve H. Jager; J. T. Ross; W. D. Ferguson; Albert Frahm; C. H. Chalmers and John T. Borton, Partners; David Jackman, Jr.; and Garvey Drilling Company, Appellees.

*Lael Alkire,* of the firm of *Yankey, Alkire, McClintock, Clausing* and *Cold-snow* of Wichita, argued the cause for Adolph Beren, I. H. Beren, H. H. Beren, Co-Partners, d/b/a Okmar Oil Co., Appellees.

*Walker W. Smith,* of El Dorado, represented The El Dorado Refining Company, Inc., and T. A. Helling, Appellees.

The opinion of the court was delivered by

PARKER, J.: In this action, under pleadings not in controversy but joining issue on all questions pertinent thereto, judgment was rendered adjudicating the past, present and future rights of the parties to the landowners' royalty payable under the terms of a basic oil and gas lease covering two quarter sections of real estate, which had been sold in two separate tracts to different purchasers after the execution of such lease. Plaintiffs, the purchasers of one of such tracts, appeal from the judgment decreeing they have no right to share in royalty payable for oil produced from an oil well located on the other quarter section of land, to which they have no title in either surface or minerals in place.

Many parties and interests are involved in this case. Nevertheless, once the complicated facts on which the lower court based its decision are set forth at length, its decisive issues become comparatively simple. The facts, as well as the reasons for its decision, were fully covered by the trial court in exhaustive findings of fact and conclusions of law. Indeed, since the findings are not attacked by

either party they must be regarded as controlling. For reasons just stated, and because we know of no better way to depict the factual picture in such manner as to avoid confusion respecting decision of the questions presented, such findings of fact and conclusions of law are appended to and made a part of this opinion.

Pertinent portions of the judgment, from which the defendants took no appeal, read:

"It is therefore by the court considered, ordered and adjudged that judgment be rendered herein upon the conclusions of fact and law filed herein by the court.

"It is further by the court considered, ordered and adjudged that the oil and gas mining lease covering North Half (N ½) of Section Twelve (12), Township Seventeen (17), Range Nine (9), of Ellsworth County, Kansas, is valid, subsisting and in full force and effect as to all of the real estate or originally embraced therein, and the defendants Inez B. Janzen, Elda Carol Janzen Perkins, Edwin Janzen, Melvin R. Janzen and Thelbert Janzen are estopped from claiming that the oil and gas lease is invalid.

"It is further by the court considered, ordered and adjudged that the plaintiffs have no right, title to, or interest in the Northwest Quarter (NW ¼) of Section (12), Township Seventeen (17), Range Nine (9), in Ellsworth County, Kansas, and no right to any of the royalties paid from oil produced from a well or wells located thereon.

"It is further by the court considered, ordered and adjudged that the whole land owner's ⅛ royalty of oil produced from the Northwest Quarter (NW ¼) of Section Twelve (12), Township Seventeen (17), Range Nine (9), of Ellsworth County, Kansas is owned by the defendants Janzen in the proportions shown by the division orders signed by all such defendants and are entitled to the ⅛ royalty in all oil heretofore produced and all oil hereafter produced from said described real estate."

At this point disposition of the appellate issues involved will be simplified by brief reference to the identity of the parties and their respective interests.

The plaintiffs, some of whom had earlier joined in the basic oil and gas lease covering the north half of section twelve, subsequently acquired title to the northeast quarter of such section, as the result of a partition action, under a sheriff's deed reciting that tract of land was conveyed subject to such lease.

In the course of the same partition action, wherein judgment was rendered decreeing partition of the north half of section twelve and directing its sale in two separate tracts, subject to the basic oil and gas lease above mentioned, the defendant Inez B. Janzen bid in the northwest quarter of such section, subject to such lease. Thereafter she acquired title to such tract under a sheriff's deed

reciting that it was conveyed subject to that lease. Subsequently, Mrs. Janzen, her husband joining, executed four separate conveyances of mineral interests in and to the northwest quarter, granting a one-eighth mineral interest to each of the defendants Elda Carol Janzen Perkins, Edwin Janzen, Melvin R. Janzen and Thelbert Janzen, each conveying instrument stating that the sale of the interest therein conveyed was made subject to the terms of such lease. Thus it appears the interests of these grantees are the same as those of their mother, Mrs. Janzen. For that reason, and for another to be presently disclosed, the defendants Janzen, including Elda Carol Janzen Perkins, will be hereinafter referred to in this opinion as the appellees.

Except for the individuals above mentioned the interests of all other persons named herein as defendants spring from the seven-eighths working interest granted to the original lessee by the terms of the basic oil and gas lease. Plaintiffs have not appealed from the portion of the judgment holding that instrument is valid, subsisting and in full force and effect as to all the real estate originally embraced therein. And, as we have heretofore indicated, none of the defendants have perfected appeals from the judgment. Therefore, except for Sohio Petroleum Co. Inc., which has impounded the royalty due to landowners under the terms of the lease and stands ready to pay the same to whomever may be entitled thereto, none of the defendants having rights in the seven-eighths working interest will be affected by this appeal.

Since they give rise to this controversy two other matters, even though the facts with respect thereto are to be found in the appendix, should be specifically noted.

The first is that the northwest quarter of section twelve, now owned by the appellees, and the northeast quarter of the same section, now owned by appellants, were each acquired by their present owners subject to a basic oil and gas lease, containing what is known to the oil industry as an entirety clause which, so far as here pertinent, reads:

"If the leased premises are now or hereafter owned in severalty or in separate tracts, the premises, nevertheless, may be developed and operated as an entirety, and the royalties shall be paid to each separate owner in the proportion that the acreage owned by him bears to the entire leased area. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may hereafter be divided by sale, devise, or otherwise, or to furnish separate measuring or receiving tanks for the oil produced from such separate tracts."

The second of such matters is that after appellants and appellees had acquired title to their respective tracts of real estate a producing oil well was brought in on the northwest quarter of section 12, whereupon appellants claimed that, under the existing facts and circumstances, they were entitled to the proportion of the landowners' royalty that the acreage owned by them bore to the entire leased area, namely one-half, under and by virtue of the entirety clause of the basic lease. On the other hand appellees claimed that all of such production belonged to them as the owners of the tract on which it was produced.

Upon careful analysis of the contents of the appendix, and what has been heretofore stated, it becomes obvious that the principal question presented by this appeal can be stated thus: Where a half section of land, covered by a basic oil and gas lease containing an entirety clause such as has been heretofore quoted, is sold at partition sale and each quarter section thereof is purchased and acquired by a different owner or owners subject to the terms and conditions of such lease, do the purchasers of one of the quarter sections, upon which there is no oil being produced, participate in the landowner's share of the oil thereafter discovered and produced from the other quarter section in the proportion that the acreage owned by them bears to the entire leased area?

We know of and are cited to no authorities holding that the inclusion in an oil and gas lease of an entirety clause, such as is here involved, makes either the instrument or the clause itself void, invalid or unenforceable on grounds of public policy or for any other reason. Indeed our view is that the person or persons legally entitled to execute an ordinary oil and gas lease may, for the protection of all parties thereto, including the grantor and grantee and their successors in interest, lawfully make provision for the manner in which (a) the leasehold is to be operated and (b) payment of the landowner's share of oil and gas rentals, either in cash rental or a share in production, is to be made during its tenure. In our opinion to hold otherwise would result in depriving the fee owner of the real estate of rights possessed by him at the time of the negotiation of the lease.

Having determined the entirety clause placed in the basic oil and gas lease at the time of its execution by the then fee owners of the involved real estate was neither invalid nor unenforceable the second phase of the decisive question involved in this case be-

comes, as we have previously indicated, quite simple. In the face of the record the incontrovertible facts are that appellees, and for that matter the appellants, acquired the respective tracts of real estate on which they now base their royalty claims prior to the discovery of oil on either tract under partition proceedings and sheriff's deeds specifically reciting that each tract of real estate was being sold and conveyed subject to the terms and provisions of such oil and gas lease. That, under our decisions (See, e. g., *Schmucker v. Sibert*, 18 Kan. 104, 111; *Foetisch v. White*, 124 Kan. 136, 140, 257 Pac. 941), meant that when they accepted their respective deeds they made them contracts in writing whereby they not only took, but agreed to take, their particular tracts with whatever benefits or burdens might eventually come to them under the terms of such lease. Included in the benefits and burdens of that instrument were those imposed by the terms of the entirety clause which has been heretofore quoted and need not be repeated. Having agreed to accept its terms and conditions neither appellees nor appellants can now be heard to dispute or deny that during its existence royalties accruing from the entire acreage of the land covered by the terms of the basic oil and gas lease shall be paid to them as separate owners in the proportion that the acreage now owned by them bears to the entire leased area. It necessarily follows that the heretofore posed decisive question involved in this appeal must be answered in the affirmative.

We are unable to agree with appellees' contention the conclusion just announced is contrary to *Carlock v. Krug*, 151 Kan. 407, 99 P. 2d 858, wherein it is held:

"When a tract of land upon which an oil and gas lease has been given is subsequently divided into different ownerships, the owners of the separate parcels or mineral interests are only entitled—in the absence of specific provisions or agreements to the contrary—to the royalties accruing from production on the particular tract to which their ownership attaches." (Syl. ¶ 1.)

On the contrary it is our view that under the facts, conditions and circumstances of this case such conclusion is in entire accord with what is there said and held. Here, as we have pointed out, the parties took title to their respective tracts of real estate under an agreement that the interests acquired therein were subject to an oil and gas lease which, when carefully analyzed, expressly provides that in the event the mineral interests became separately owned the royalties accruing from the existing lease should nevertheless be

treated as an entirety and the separate owners of the leased acreage participate therein pro rata.

Nor are we in accord with appellees' position all other provisions of the involved entirety clause are wholly dependent upon the phrase "the premises, nevertheless, may be developed and operated as an entirety." Our view, conceding that such phrase gave the lessee an option to develop the leased premises in their entirety, is that when all the provisions of such clause are read together they must be construed to mean that if after the execution of the lease the leased premises are owned in severalty or in separate tracts royalties payable from production shall be paid to the separate owners in the proportion therein stated, irrespective of the manner in which the lessee has seen fit to develop the entire leased area. This construction leads to the additional conclusion, as we have previously indicated, that such entirety clause must be regarded as entered into for the benefit of all parties executing it, not solely for the benefit of the lessee. So construed and, on the basis of what has been previously said and held in preceding paragraphs of this opinion, it necessarily follows that, under the existing facts and circumstances, all conclusions of the trial court to the effect such clause is ineffective as against present owners of the fee and should not be enforced are erroneous.

Many other questions are raised and discussed in the briefs. However, in view of our disposition of what we have said and held is the decisive question involved on this appeal such questions, as well as decisions cited in their support, have become immaterial and need not be considered or discussed.

Portions of the judgment heretofore mentioned and described as not involved on this appeal are affirmed. All other portions of such judgment are reversed with directions to enter judgment in favor of appellants in conformity with the views herein expressed.

It is so ordered.

# APPENDIX

## THE COURT'S CONCLUSIONS OF FACT

From a careful and complete consideration of the evidence, including those portions of the pleadings which may properly be considered as such, and including the stipulations of the parties, the court makes and renders the following conclusions of fact and of law.

1. That on July 15, 1948, the plaintiffs, except the plaintiff Dorothy Goff, together with Mrs. George W. Hoffman, a widow, Laura Basye and John Basye, her husband, Ella Rathbun and Dick Rathbun, her husband, Henry Hoffman and Ella Hoffman, his wife, Elmer Hoffman and Carmen Hoffman, his wife, Mrs. George Campbell and George Campbell, her husband, and Eva Mauch, a widow, duly signed, executed, and acknowledged as lessors and delivered to H. V. Elwell as lessee an oil and gas lease in the farm denominated as a Form 88 B plus lease, a copy of which has been admitted in evidence as plaintiff's Exhibit B, covering the following described real estate situated in the county of Ellsworth and State of Kansas, to-wit:

The North Half (N½) of Section Twelve (12), Township Seventeen (17), Range Nine (9), containing three hundred twenty (320) acres, more or less.

2. That on July 15, 1948, the above-named lessors were owners in fee simple of the above-described real estate.

3. That the parties to the subject oil and gas lease agreed that the same "shall remain in full force for a term of five (5) years," from the date of July 15, 1948, and "as long thereafter as oil or gas, or either of them, is producing from said land by the lessee, or the premises are being developed or operated." That said lease further provided that if operations for the drilling of a well be not commenced on said land on or before July 15, 1949, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Lorraine State Bank at Lorraine, Kansas, or its successors, the sum of Three Hundred Twenty Dollars ($320.00), which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date, and that in like manner

and upon like payments or tenders the commencement of a well may be further deferred for like periods and the same number of months successively. No party disputes the fact that delay rentals for the entire acreage were paid by the lessee or his assigns on or before the 15th day of July in 1949, 1950, 1951 and 1952.

4. That the subject oil and gas lease further provides that if the lessee shall commence operations within the term of the lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with the like effect as if such well had been completed within the term of years herein first mentioned.

5. That the subject oil and gas lease further provides as follows: "If the leased premises are now or hereafter owned in severalty or in separate tracts, the premises, nevertheless, may be developed and operated as an entirety, and the royalties shall be paid to each separate owner in the proportion that the acreage owned by him bears to the entire leased area. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may hereafter be divided by sale, devise, or otherwise, or to furnish separate measuring or receiving tanks for the oil produced from such separate tracts."

6. That the subject oil and gas lease was duly recorded in the office of the Register of Deeds of Ellsworth County, Kansas, on the 1st day of October, 1948, at 8 o'clock A. M. of said day, and was subsequently assigned of record within the term to Emmett E. Pratt by H. V. Elwell on January 3rd, 1950, and by Emmett E. Pratt to the defendants Beren, doing business as the Okmar Oil Company, on the 20th day of January, 1950.

7. That on the 16th day of February, 1950, an action in partition covering the North Half (N½) of Section Twelve (12), Township Seventeen South (17S), Range Nine West (9W), Ellsworth County, Kansas, entitled Laura Basye, et al. vs. Ella Rathburn, et al., and numbered 5164 was filed in the District Court of Ellsworth County, Kansas, and service was duly and regularly obtained in said action upon all of the then owners as copartners of said real estate. That on the 9th day of October, 1950, judgment in partition of said real estate was duly entered in said cause, and the court duly found in said judgment that the subject oil and gas lease was valid and sub-

sisting and that said real estate should and ought to be partitioned or sold subject thereto. That on the 21st day of October, 1950, an Order of Sale pursuant to said judgment in partition was duly directed by the Clerk of the District Court of Ellsworth County, Kansas, to the Sheriff of said county, commanding him to sell said real estate at public sale, subject to said oil and gas lease. That notice of said sale, subject to said oil and gas lease, was duly published as required by law. That on the 27th day of November, 1950, the Sheriff of Ellsworth County, Kansas, duly offered said real estate for sale and sold the same in separate tracts as follows, to the following persons as the highest and best bidders therefor:

(a) The Northeast Quarter (NE¼) of Section Twelve (12), Township Seventeen South (17S), Range Nine West (9W), Ellsworth County, Kansas, to Fred J. Hoffman, Anna Hoffman, Lena Kempke, Fred W. Kempke, Minnie Goff, and Dorothy Goff, who are the plaintiffs herein.

(b) The Northwest Quarter (NW¼) of Section Twelve (12), Township Seventeen South (17S), Range Nine West (9W), Ellsworth County, Kansas, to Inez B. Janzen, who is a defendant herein.

8. That the above-described sale of real estate in partition was by the court confirmed on the 9th day of December, 1950, subject to said oil and gas lease, and sheriff's deeds to the respective purchasers as aforesaid, each subject to said oil and gas lease, were duly executed and delivered to the said purchasers on the 12th day of December, 1950.

9. That on or about the 25th day of June, 1953, the El Dorado Refining Company drilled a dry hole on the West Half of the Northwest Quarter of the said section, which was drilled, plugged and abandoned by that date. That an assignment of said West Half of the Northwest Quarter of said section from the defendants Beren, doing business as the Okmar Oil Company, to the El Dorado Refining Company was duly recorded in Ellsworth County, Kansas, in the office of the Register of Deeds of said county, and is dated July 2, 1953, and that a quarter of the working interest in this assignment was duly assigned by the El Dorado Refining Company to T. E. Helling on July 6, 1953, and duly recorded. That on July 14, 1953, the defendants Beren, doing business as the Okmar Oil Company, duly assigned the lease on the East Half of the Northwest Quarter of said section to the defendant, Petroleum, Inc., and

on July 13, 1953, the El Dorado Refining Company and T. A. Helling duly assigned the West Half of the Northwest Quarter of said section to the defendant Petroleum, Inc. That on July 15, 1953, the defendant Petroleum, Inc., duly conveyed to the defendants Beren, doing business as the Okmar Oil Company, a 1/32 overriding royalty interest in the Northwest Quarter of said section, and a 1/32 overriding royalty interest in the same area to El Dorado Refining Company and T. A. Helling, three-fourths of the same being to El Dorado and the remaining one-fourth to T. A. Helling. That on July 14, 1953, the defendants Beren, doing business as the Okmar Oil Company, duly conveyed one-half of the working interest in the Northeast Quarter of said section to the defendant Petroleum, Inc., and that the present ownership of the oil and gas lease insofar as the same covers the Northeast Quarter of said section is now vested one-half in the defendants Beren, doing business as the Okmar Oil Company, and one-half in the defendant Petroleum, Inc. That all of the instruments of assignment referred to in this paragraph were duly recorded in the office of the Register of Deeds of Ellsworth County, Kansas.

10. That on the morning of July 15, 1953, the defendant Petroleum, Inc., commenced drilling operations upon the North Half of Section Twelve, Township Seventeen South (17S), Range Nine West (9W), under the subject oil and gas lease, the operations for a well being commenced on the Northwest Quarter of said section. That said drilling operations were continued with due diligence, and that a producing oil well was brought in and completed on said real estate on August 12, 1953. That since said date, at the time of the filing of this action, and now, said oil well on said real estate is producing oil in paying and commercial quantities.

11. That the crude petroleum from oil runs of the oil well brought in on the subject real estate have been, since the first run September 16, 1953, sold to the defendant Sohio Petroleum Company, and that no disbursement has been made by the defendant Sohio Petroleum Company of the one-eighth of said oil runs payable in gross to the landowners under said lease. That as of the date of the filing of this action there was impounded by the defendant Sohio Petroleum Company to the credit of the owners of the undivided one-eighth royalty interest the sum and amount of One Thousand Eight Hundred Thirty-eight Dollars and Eighty Cents ($1,838.80), and that subsequent royalty interests to the landowners

have been since said time and are now impounded, subject to the further order of the court.

12. That fractional working interests in and unto the lease on the Northwest Quarter of said section were subsequent to the commencement of the oil well referred to in the preceding paragraph assigned to the defendants R. H. Garvey; William W. Garvey; James S. Garvey; Olive W. Garvey; Jean K. Garvey; Olivia G. Lincoln; Ruth G. Cochener, executrix of the Estate of R. L. Cochener, deceased; Ruth G. Cochener; Shirley F. Garvey; Eve H. Jager; J. T. Ross; W. D. Ferguson; Albert Frahm; C. H. Chalmers and John T. Borton, partners, and David Jackman, Jr. That these defendants, and the defendants El Dorado Refining Company and T. A. Helling, were brought into this action as defendants on motion of the defendant Inez B. Janzen and over the objection of the plaintiffs.

13. That on July 21, 1953, plaintiffs sent a notice to the defendant oil companies requesting a release by them of their lease on the Northeast Quarter of the said section, which release was by said defendants refused. That the defendants Beren, doing business as the Okmar Oil Company, and the defendant Petroleum, Inc., by their answers filed herein, expressly claim to hold the Northeast Quarter of the said section by virtue of the commencement of and the completion of the producing oil well referred to above on the Northwest Quarter thereof.

14. That on the 12th day of August, 1953, the defendant Petroleum, Inc., by its agent, W. W. Fisher, caused to be executed, acknowledged, and on the 13th day of August, 1953, recorded in the office of the Register of Deeds of Ellsworth County, Kansas, an affidavit of production prepared under the provisions of G. S. 1949, 55-205, of the laws of the State of Kansas, stating that in compliance with the terms of the subject oil and gas lease a producing well was commenced under said lease on the 15th day of July, 1953, and completed on the 12th day of August, 1953, and stating that said lease is now in full force and effect as to all of the acreage covered by said lease for as long as oil or gas is produced from said land or any part thereof, and that said affidavit of production specifically referred to the North Half (N½) of Section Twelve (12), Township Seventeen South (17S), Range Nine West (9W), Ellsworth County, Kansas.

15. That on the 2nd day of August, 1953, the defendant Inez B.

Janzen and her spouse executed four separate conveyances of mineral interests in and to the Northwest Quarter of said section, conveying a one-eighth mineral interest to each of the defendants Elda Carol Janzen Perkins, Edwin Janzen, Melvin R. Janzen, and Thelbert Janzen, children of the grantors, which conveyance contains the following provision: "Said land being now under an oil and gas lease executed in favor of, as appears of record, it is understood and agreed that this sale is made subject to the terms of said lease." At the time of said conveyances the only unreleased oil and gas lease of record pertaining to said real estate was the subject oil and gas lease.

16. That in November of 1953 all of the defendants, except Sohio Petroleum Company, signed division orders furnished them by the defendant Sohio Petroleum Company, which division orders set forth the specific interest of each and every owner of an interest in the lease covering the Northwest Quarter in said section, and specifically stated therein the interest of the defendants Janzen to be the total one-eighth landowner's royalty from production on said Northwest Quarter under the subject oil and gas lease. That although in the reply of said defendants to the answers of the defendant companies on defendants Janzen's cross-petition it was alleged that these defendants under the age of majority repudiated their signatures on said division order, no evidence was offered as to the ages of any of the defendants Janzen.

17. That on November 23, 1953, the plaintiffs made demand upon the defendants Inez B. Janzen; Sohio Petroleum Company; Petroleum, Inc., and the defendants Beren doing business as the Okmar Oil Company for an accounting to them of their share as owners of the Northeast Quarter of said real estate. That said demand was unavailing.

18. That on February 19, 1954, the defendant Inez B. Janzen executed a release for surface damages to the Northwest Quarter of the said section insofar as the same pertained to the existing oil well, and accepted the check of the defendant Petroleum, Inc., in the amount of $40.00 for the same.

19. That on March 24, 1954, the defendant Janzen sent a notice to the defendant Petroleum, Inc., informing it that it was a trespasser upon the Northwest Quarter of the said section, sending the defendant Sohio Petroleum a copy of the same.

20. That the oil well on the Northwest Quarter of said section is

located generally in the southwest quarter thereof and the tank batteries are located generally in the southwest corner of the Northwest Quarter of said section.

21. At all times since the completion of the well it has been operated by Petroleum, Inc.

22. That crude oil from said oil well located on the Northwest Quarter of said section was sold to Sohio Petroleum Company and that the company paid to the owners of the working interest and the overriding royalty interest, the proceeds from their respective shares of the oil severed and run from said Northwest Quarter during the time from September of 1953 to April of 1954, inclusive. Said payments were made in accordance with the provisions of the division order setting forth the interests of the different owners and signed by all of them and said payments so made were received by said interest holders and accepted by them.

23. The defendant Inez B. Janzen and her husband were vacationing in Colorado on the 15th day of July, 1953, when the defendant Petroleum, Inc., commenced actual drilling of the test well on the lands involved in this action. They received word by telephone from other members of their family approximately seven days after the commencement that drilling operations had been commenced and were then in progress. Neither Mrs. Janzen nor her husband, nor any of her children who later took an interest in the minerals under the Northwest Quarter of Section 12 through conveyances entitled "Sale of Oil and Gas Royalty," made any objection to the drilling, completion or equipping of this well by Petroleum, Inc., until approximately eight months later on the 24th day of March, 1954, notwithstanding the fact that within said eight-month period the defendant Petroleum, Inc., had been in actual occupancy and possession of a part of the land involved in this action as the operator of the oil and gas well now located thereon.

24. That the defendant, Petroleum, Inc., as operator, on its own behalf and on behalf of other owners of a working interest made the following expenditures in the drilling, equipping and operation of the oil and gas well involved in this action:

Expense in drilling and testing said well.............. $21,366.37
Expense in casing and equipping said well for production, including surface equipment, such as pumping unit, tankage .................................. 13,470.77

| | |
|---|---:|
| Operating expense from August, 1953 to March 31, 1954 .................................. | 1,514.85 |
| Operating expenses from April 1, 1954 to September 30, 1954 .. ....................... ...... | 995.14 |

25. A total of $37,347.13 was expended by Petroleum, Inc., and the other owners of the working interest on the drilling, testing, equipping and operating of said oil well without objection from the defendants Janzen, and of that sum, some portion of the drilling and testing costs and all of the equipping and operating expenses prior to March, 1954, which in any event would total in excess of $15,000.00 was spent by Petroleum, Inc., and the other owners of a working interest without objection by the defendants after they knew that operations were being conducted and substantial sums of money spent.

26. The expenditures described in the next preceding findings were made by Petroleum, Inc., and the other owners of the working interest in reliance upon the validity of the oil and gas lease involved in this action.

## THE COURT'S CONCLUSIONS OF LAW.

1. That the basic oil and gas lease executed and delivered on July 15, 1948, and recorded on the 1st day of October 1948, covered the entire North Half (N½) of Section Twelve (12), Seventeen South (17S), Range Nine West (9W), Ellsworth County, Kansas, the same being a tract of three hundred twenty (320) acres.

2. That on December 12, 1950, the plaintiffs acquired title to the Northeast Quarter (NE ¼) of Section Twelve (12), Township Seventeen (17), Range Nine (9), subject to the basic oil and gas lease, and has been since said date and is now the owner in fee of said Northeast Quarter (NE ¼), the same being a tract of one hundred sixty (160) acres.

3. That on December 12, 1950, the defendant Inez B. Janzen acquired title to the Northwest Quarter (NW ¼) of Section Twelve (12), Township Seventeen (17), Range Nine (9), subject to the basic oil and gas lease, and has been since said date and is now the owner of said Northwest Quarter (NW ¼), subject to the subsequent conveyance by the defendant Inez B. Janzen of an undivided one-half of her mineral interest in said real estate to her children, the defendants Elda Carol Janzen Perkins, Edwin Janzen, Melvin R. Janzen, and Thelbert Janzen, the same being a tract of one hundred sixty (160) acres.

4. That both plaintiffs and the defendants Janzen at the time of their acquisition of the aforesaid real estate were charged with notice of the contents and provisions of the basic oil and gas lease, and the ownership of the separate tracts described above by such parties was subject to said basic oil and gas lease.

5. That operations for the drilling of an oil well were commenced on the Northwest Quarter (NW ¼) of Section Twelve (12), Township Seventeen (17), Range Nine (9), within the term of the lease, and that said operations culminated in the development of a well producing oil in paying quantities on August 12, 1954.

6. That by reason of the development of oil in paying quantities upon the subject real estate, the basic lease was extended beyond its primary term in full force and effect as to all of the North Half (N ½) of Section Twelve (12), Township Seventeen South (17S), Range Nine West (9W), Ellsworth County, Kansas.

7. That said basic oil and gas lease is now valid, subsisting, and in full force and effect as to all of the real estate originally embraced in the same.

8. That the defendants Janzen, by their acceptance of payment for surface damages, by standing by in silence without asserting the invalidity of the oil and gas lease which is the subject of this action, and by permitting the owners of the working interests in the oil and gas lease to expend large sums of money in completing the drilling, testing and equipping of said well, and in the operating of the same for some eight months, are now estopped from claiming that the subject oil and gas lease is invalid.

9. That the entirety clause as contained in the lease is permissive only, and gives to the lessee the privilege of operating and developing or not operating and developing the lease as an entirety. It does not require the lessee so to develop and operate the leased premises. The clause in question being merely permissive to the lessee, it is therefore not legally sufficient to be tantamount to a severance of the lessor's estate in the oil and gas minerals from their estate in the land itself; and such entirety clause which does not require the development and operating of the leased premises as an entirety is ineffective as against any owner of the fee.

10. That Inez B. Janzen, at the sheriff's sale, purchased the fee title to the Northwest Quarter of Section 12, subject to the right of the lessee under the terms of the oil and gas lease thereon, and by said purchase she obtained title to all of the surface and mineral

rights, including any royalties to be received therefrom owned by the former fee owners of said quarter section, and that by said purchase she became the owner of but one estate and that estate was and is unaffected by the entirety clause of the oil and gas lease.

11. That the plaintiffs have no right, title or interest in the Northwest Quarter of Section 12 and no right to royalties paid from oil produced from a well or wells located thereon.

12. The owners of the working interest in the oil and gas lease covering the Northwest Quarter have elected not to operate the lease under the provisions of the entirety clause and have elected to operate the Northwest Quarter of Section 12 separate from the Northeast Quarter thereof, as shown by the following:

A. The ownership of the working interest in the Northwest Quarter is in different parties and different interests as to common parties interested in the Northeast Quarter and the Northwest Quarter, and crude oil from both quarters cannot be mingled and the proceeds accruing determined for each owner in one tank battery because of the diversity of ownership of the two quarters.

B. All of the owners of any interest in the oil and gas lease covering the Northwest Quarter have executed division orders covering the disposition of oil runs from the Northwest Quarter alone.

C. A tank battery has been erected in the Southwest corner of the Northwest Quarter of said section to receive the oil run from said well located on the Northwest Quarter.

D. Crude oil run from the Northwest Quarter from September of 1953 to April 1954 has been received and accepted by the owners of the working interest in the oil and gas lease covering the Northwest Quarter; and the owners of the Northeast Quarter, being different from the owners of the Northwest Quarter, have received none of the oil runs by reason of their ownership of the lease on the Northeast Quarter.

13. The division order executed and signed by all of the parties having an interest in the oil and gas runs from the Northwest Quarter of said Section 12 constitutes an agreement among these parties and a representation that the interest of each was as stated therein.

14. The ownership of the working interests, of the overriding royalty interests, and of the royalty interests of the several defendants Janzen, are each correctly set forth in the division order executed by all of the parties with reference to said Northwest Quarter of Section 12, Township 17 South, Range 3 West, Ellsworth County, Kansas, and as shown by Exhibits "A" to "E", inclusive; and said defendants are each entitled to a judgment adjudging and affirming the same. That all parties are entitled to judgments consistent with and in accord with these conclusions.

15. The defendant Sohio Petroleum Company is entitled to an order and decree adjudging all title and ownership of the whole landowner's one-eighth royalty of oil produced from the Northwest Quarter of 12-17s-9w in Ellsworth County, Kansas, to be owned by the defendants Janzen in the proportion shown by the division orders signed by all such defendants; and to an order and decree adjudging said defendants to be the owners, in like proportions, of the whole landowner's royalty in all oil now accrued from said described 160 acres and held in suspension, together with all future proceeds of sale in like proportions.

The costs of this action should be taxed to the plaintiffs.