**JUL–TEX DRILLING COMPANY, Inc., Victor W. Klein and G. M. Endicott, Plaintiffs,**

**v.**

**The PURE OIL COMPANY and Vern N. Nelson and Bernice Nelson, Defendants.**

**Civ. A. No. 7175.**

United States District Court
D. Colorado.

Feb. 7, 1962.

---

Baker and Smart and Bayard B. Taylor, Denver, Colo., for plaintiffs.

Holme, Roberts, More & Owen, Ted P. Stockmar, and Kenneth R. Whiting, Denver, Colo., for defendant Pure Oil Co.

George A. Epperson, Donald F. McClary and David L. Roberts, Fort Morgan, Colo., for defendants Vern N. Nelson and Bernice Nelson.

DOYLE, District Judge.

The action herein seeks a declaratory judgment construing an oil and gas lease. The defendants' motion to dismiss is for failure to state a claim upon which relief can be granted and, essentially, it asserts that the complaint fails to submit an issue justifying the granting of declaratory relief.

The complaint alleges that on or about January 29, 1951, the Nelsons gave an oil and gas lease to The Superior Oil Company with respect to all of their interests in the following-described property:

> Section Three (3): West one-half of the Northeast Quarter (W-½ NE-¼); Section Four (4): Northwest Quarter (NW-¼); Section Fifteen (15): Northeast Quarter (NE-¼), all in Township 3 S,

Range 57 W of the 6th P.M., containing 400 acres, more or less.

The Nelsons had and now have record title to a one-fourth (¼) interest in the Northwest Quarter of Section Four, the entire interest in the Northeast Quarter of Section Fifteen, and an undivided three-fourths interest in the West one-half of the Northeast Quarter of Section Three. The remaining three-fourths interest in the Northwest Quarter of Section Four is leased by other owners, namely, Johnson and Burnham. All of the described leases reserved to the lessor a landowner's royalty of one-eighth of all oil, gas and other hydrocarbons produced, saved and marketed therefrom. It further appears from the complaint that the plaintiffs have acquired the entire working interest in the leases insofar as they cover the Northwest Quarter of Section Four. This is the only one of the three tracts described above in which there is production.

The lease from the Nelsons to The Superior Oil Company contains the following provision, commonly called an "Entirety Clause":

> "If the leased premises are now or shall hereafter be owned in severalty or in separate tracts, the premises nevertheless shall be developed and operated as one lease, and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each separate owner bears to the entire leased acreage. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may be hereafter divided by sale, devise, descent or otherwise or to furnish separate measuring or receiving tanks. It is hereby agreed that in the event this lease shall be assigned as to a part or as to parts of the above described land and the holder or owner of any such part or

parts shall make default in the payment of the proportionate part of the rent due from him or them, such default shall not operate to defeat or affect the lease insofar as it covers a part of said land upon which the lessee or any assignee hereof shall make due payment of said rentals."

The complaint also discloses that The Pure Oil Company is the purchaser of the production from the Northwest Quarter of Section Four and defendants take the position that the mineral acreage owned by the Nelsons in the West one-half of the Northeast Quarter of Section Three, and Northeast Quarter of Section Fifteen (further described above), must be added to the mineral interests of the Nelsons in the Northwest Quarter of Section Four in computing the royalty to which the Nelsons are entitled from the proceeds of production on the Northwest Quarter of Section Four.

Plaintiffs further allege that if the position of the Nelsons and The Pure Oil Company is accepted, the Nelsons, who own a total in three tracts comprising 260 mineral acres of the total 400, would be entitled to $260/400$ths of one-eighth (owner's royalty), instead of one-fourth of one-eighth (their percentage of the property which is producing), thus raising the total owner's royalty payable to a level of $17\frac{1}{2}$ per cent. of the entire production instead of one-eighth, or $12\frac{1}{2}$ per cent.

In order to clarify the issues, the facts are here racapitulated:

The Nelsons are the owners of the following mineral acres:

A. West one-half of Northeast Quarter, Section 3, ($\frac{3}{4}$ interest)=60 mineral acres;

B. Northeast Quarter of Section 15, (entire interest)=160 mineral acres;

C. Northwest Quarter of Section 4, ($\frac{1}{4}$ interest)=40 mineral acres. [In tract "C", Johnson owns 40 mineral acres and Burnham owns 80 mineral acres. This is the controversial area in which plaintiffs have acquired the working interest.]

Thus, the Nelsons' acreage (that is, the acreage which they could demise), is shown to total 260 acres and not 400 acres described in the lease.

The Nelsons contend that under the entirety clause royalty must be paid "in the proportion that the acreage owned by (them) bears to the entire leased acreage." This is predicated upon the fact that the leased premises are "owned in severalty or in separate tracts." This would mean that the producing area would have to pay them royalties in the proportion $260/400$ths of one-eighth, or 8.125 per cent.

Plaintiffs' contention is that the Nelsons' one-quarter interest is entitled to a one-fourth of one-eighth, or 3.125 per cent. Plaintiffs say that if the entirety clause operates it could only take effect with reference to the 260 acres the Nelsons own and not to the entire 400 acres and hence by this mathematical approach the Nelsons should be entitled to one-fourth of $260/260$ x $\frac{1}{8}$th, or 3.125 per cent.

To amplify the Nelson argument further: They maintain that the entirety clause is valid and applicable; that the leased premises are now (meaning at the time of the execution of the lease) owned in severalty or in separate tracts, and that this requires that the premises be developed and operated as one lease and that royalties accruing thereunder must be treated as an entirety and must be divided among and paid to separate owners in a proportion measured by the relationship of the acreage owned by each owner to the entire leased acreage. In other words, there are three tracts in the Nelson lease and there are other owners of Section Four of the Northwest Quarter, the area on which the production is located. These facts serve to activate the entirety clause so as to require royalty to be paid according to the proportionate ownership of the Nelsons in the entire area covered by the

three tracts. Thus, the Nelsons urge a literal treatment and application of the entirety clause.

Plaintiffs' position is that application of the entirety clause to these facts requires a strained, unnatural and ill fitting construction; that it is not adaptable here because Burnham and Johnson are not parties to the Nelson lease; that "leased premises" as here used means the 260 acres actually owned and therefore granted by Nelsons, and not the entire 400 acres in the three described tracts. In other words, that the term "leased premises" as used in the entirety clause means the area embraced within the Nelson lease and does not relate to the 400 acres in the unit.

The philosophy behind the entirety clause is explained in 3A Summers Oil and Gas, Section 609, 2d Ed. The author points out that a majority of the courts hold that where a tract has been leased for oil and gas and is afterwards subdivided and sold in separate tracts subject to the lease, the owners of such separate tracts are entitled to all of the rents and royalties accruing from their separate tracts only and that much litigation has developed from the hardship thus created. He further comments:

> "To avoid the litigation that so commonly arises out of situations of this sort, lessees have inserted in many modern leases a provision, commonly referred to as the 'entirety' clause, to the effect that if the lands leased shall subsequently be owned in separate tracts, the lessee may develop the original tract as a unit and royalties shall be apportioned among the owners of the separate tracts in the proportion that their acreage bears to the entire tract covered by the lease. The provision for development of the demised land as a unit merely states expressly what the courts have implied. The provision for the apportionment of royalties on the basis of acreage makes certain the matter of the division of them among the owners of the separate tracts and

avoids much of the litigation that might otherwise arise."

In the absence of such a provision some courts nevertheless hold that the owner of the subdivided portion is entitled to royalties in the proportion that the area of his land bears to the entire tract. Wettengel v. Gormley, 160 Pa. 559, 28 A. 934; Campbell v. Lynch, 81 W.Va. 374, 94 S.E. 739, L.R.A.1918B, 1070. (But see Musgrave v. Musgrave, 86 W. Va. 119, 103 S.E. 302, 16 A.L.R. 564). The vast majority of courts take the contrary view and refuse to apportion in the absence of a stipulation requiring it. Fairbanks v. Warrum, 56 Ind.App. 337, 104 N.E. 983; Central Pipe Line Co. v. Hutson, 401 Ill. 447, 82 N.E.2d 624. Colorado adheres to this view. Moshiek v. Lininger, 130 Colo. 266, 274 P.2d 965.

The application of the entirety clause to lands embraced by the lease and subdivided at the time or subsequently, is understandable. The lessee can treat the lands as a unit and can pay royalties on a proportionate basis and thus the result is more equitable. However, there is no apparent justification for applying the clause where, as here, there are separate leases applicable to the subdivided area. Here the lease in suit, although it describes 400 acres, is effective only as to the acreage owned by the Nelsons. For this reason the "leased premises" here are not "owned in severalty." The leased premises include only the acreage demised in the Nelson lease, and no other. The premises demised in the Johnson and Burnham leases are not the same as the premises leased by the Nelsons, and the Nelsons are not entitled to a royalty calculated by relating their acreage to that outside their lease merely because it is part of the quarter section in which Johnson and Burnham have an interest. This result is suggested by Summers, supra, page 446, when he says:

> " * * * To bring the apportionment provision of the entirety clause into operation with respect to a grantee of an oil and gas lessor, the interest conveyed must be a portion of the leased premises. * * * "

Does the inclusion of the word "now" in the entirety clause contained in the lease at bar (that is, "are now or shall hereafter be"), strengthen the Nelsons' contention, which is, that the entirety clause applies where the tract described in the lease has been subdivided at the time of the execution of the lease and part of it is not owned by the lessor and is not demised as a result of the lease? To be sure, the entirety problem has traditionally arisen where the land was subdivided *after* the lease was given. The insertion of the term "now" might in some circumstances result in the entirety clause's being applicable. If, for example, Johnson and Burnham had been parties to the lease in question, the entirety clause might well apply. In that instance Johnson and Burnham would be also subject to the clause and their royalty would be thereby decreased. The inequitable and illogical burden on the lessee which would result from its application here would not in that situation arise. Here, the "now" makes no substantial difference because the leased premises in question, that is, the lands which we construe to be effectively conveyed by the lease, are held by the Nelsons alone.

The issue is one of first impression in Colorado and the Tenth Circuit. The only decided case which has been called to the Court's attention which treats the problem is that of Thomas Gilcrease Foundation v. Stanolind Oil & Gas Company, 153 Tex. 197, 266 S.W.2d 850. There the entirety clause was applied notwithstanding that there were separate lease agreements. The Texas Court did not consider the term "leased premises"; it construed the term "in severalty" as follows:

"But, however the term 'in severalty' may be applied in this connection, we think that in purview of the 'entirety clause' under the facts here before us the ownership of petitioner is in 'separate tracts,' and the words 'are now' must be given the effect of making the clause applicable at the time of the execution of the lease. We have been cited no authority to the effect that ownership in different undivided interests in segregated portions of the leased premises does not qualify as an ownership 'in separate tracts.' In fact Stanolind is here seeking to treat the ownership as being 'in separate tracts' in contending that royalty must be paid not in proportion that the ownership by the Foundation bears to the entire leased premises, but only from oil separately produced on each of the two quarter sections."

and concluded:

"We hold, therefore, that at the time the lease was made to Stanolind, Gilcrease did own the premises 'in severalty or in separate tracts' notwithstanding that the interest in each quarter section was an undivided interest and that the terms of the 'entirety clause' apply. The petitioner is entitled to share the royalty in proportion that the interest owned by it bears to the entire leased premises and naturally the same ruling will obtain so far as the satisfaction of the overriding royalty or oil payment is concerned. The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed."

The Gilcrease decision has been criticized. See Eighth Annual Institute on Oil and Gas Law and Taxation, page 156. The author there points out that the term "leased premises" should not include the entire land but should be restricted to the interest subject to the lease and that the interest subject to the lease was not owned in severalty in the Gilcrease case but was owned in its entirety by one lessor. This criticism has merit and it is for the reason there set forth that this Court concludes that the entirety clause has no application to the present facts.

It is also noteworthy that the conclusion we reach is in accord with paragraph 7 of the lease in the case at bar which

is the "lesser interest" clause, which clause restricts the amount of royalty where the lessor owns an interest less than the entire undivided fee to the proportion which his interest bears to the whole and undivided fee. If the entirety clause were to be applied to the present facts there could be difficulty in reconciling its application with the express terms of paragraph 7.

The defendants' motion to dismiss is denied and the defendants are granted twenty days to file an answer. If the defendants elect in writing to stand upon their motion and if they make this election within twenty days from the entry of this order, the Court will entertain a motion for summary judgment by the plaintiffs based upon the present adjudication.