No. 45,885·

RUTHVEN & COMPANY, a Partnership Composed of Clifford R. Holland, Jr., George W. Holland and Lucille Holland; GEORGIANA W. BELL and HERBERT N. HOLLAND, *Appellants,* v. PAN AMERICAN PETROLEUM CORPORATION, TONY MERMIS and THERESA F. FISHER, Co-Executors of the Estate of Paulina Mermis, Deceased; RENETTA S. WITT, Individually and as Administratrix of the Estate of Lloyd J. Witt, Deceased, and Also as Mother and Natural Guardian of Connie Sue Witt and Marlene Ann Witt, Minors; MARLENE ANN WITT and CONNIE SUE WITT, Minors; and CURTIS WARREN, *Appellees* and *Cross-Appellants.*

(482 P. 2d 28)

Opinion filed March 6, 1971.

*Marvin E. Thompson,* of Thompson, Holland and Arthur, of Russell, argued the cause, and *Herbert N. Holland,* of Holland and Holland, of Russell, was with him on the brief for the appellants.

*Norbert R. Dreiling,* of Hays, and *Glenn D. Young, Jr.* of Wichita, argued the cause, and *Dennis L. Bieker* and *Bernard J. Brungardt,* both of Hays, and *John C. Woelk* and *Richard M. Driscoll,* both of Russell, were with them on the brief for the appellees and cross-appellants.

The opinion of the court was delivered by

HARMAN, C.: This is an action for an accounting from an oil purchasing company for a share of oil produced from leased land.

The appeal involves construction of an entirety clause in the lease

under which the oil was produced. A cross-appeal concerns the validity of a separate conveyance upon which plaintiffs' claim is based.

We summarize certain background facts as stipulated by the parties prior to trial. On July 3, 1924, C. A. Mermis and his wife Paulina executed and delivered to George W. Holland as grantee an instrument entitled "Sale of Oil and Gas Royalty" in which for a consideration of $7,000 they conveyed an undivided one-fourth interest in the oil and gas minerals produced from the *west* half of a described quarter section of land in Russell county, the instrument reciting that the property was subject to a particular oil and gas lease. This instrument was not filed of record with the Russell county register of deeds until March 10, 1925—more than ninety days after its execution.

On June 13, 1936, Paulina Mermis, a widow, owner of the west half mentioned above, executed and delivered to the same George W. Holland an instrument entitled "Ratification of Mineral Deed". This instrument, which was primarily intended to ratify and confirm the July 3, 1924, document, because of possible ambiguity in the latter, was duly recorded June 15, 1936. Plaintiffs are the successors in interest to George W. Holland, who died December 22, 1946.

On June 18, 1956, the same Paulina Mermis executed and delivered to Leo J. Dreiling as lessee an oil and gas lease covering the entire quarter section for a primary term of two years. This lease was duly recorded the same day. Neither plaintiffs nor their predecessor in title ever joined in the execution of this or any other lease covering the quarter section.

Production of oil under the Dreiling lease was obtained on wells located on the *east* half of the quarter section. Stanolind Oil Purchasing Company, predecessor of defendant Pan American Petroleum Corporation, purchased the first oil produced therefrom on August 16, 1956, and production from wells on the *east* half has continued to date. No production has ever been obtained from the *west* half of the quarter section. On November 12, 1956, Stanolind obtained and issued a division order covering oil payments attributable to the production on the east half. Under this order Mrs. Mermis was to be paid all the landowner's one-eighth royalty for the production, and she was so paid by Pan American and its predecessors in title during her lifetime and until September 1, 1965.

Thereafter payment was made to the executors of her estate until the land was sold to Curtis Warren and Lloyd J. Witt, then payment was made to them until May 19, 1967, when Witt died and his share was paid to the administrator of his estate until the commencement of this suit. All royalty payments since September, 1967, have been impounded by Pan American pending determination of ownership in this litigation. Plaintiffs have never received any royalty based on production under the Dreiling lease.

No claims were ever filed against the estates of Paulina Mermis or Lloyd J. Witt and the time for filing such claims has expired.

The mineral interest conveyed by the two instruments from the Mermis's to George W. Holland was never separately valued and listed for ad valorem taxation in Russell county. Russell county has never separately valued and listed non-producing mineral interests in that county. The oil run recipients paid the ad valorem taxes assessed by Russell county on the oil royalty attributable to them.

August 28, 1967, plaintiffs commenced this action by filing their petition naming Pan American as defendant. They alleged the execution of the three instruments we have mentioned; that at the time the Dreiling lease was executed the premises were owned in severalty and by reason of an entirety clause in that lease plaintiffs were entitled to 1/64th of the proceeds of all oil produced and they asked for an accounting. Plaintiffs' claim for an apportionment of royalty is against Pan American only.

Pan American answered, asserting among other matters, the defense of laches and estoppel by conscious inaction and delay and, by way of third party practice, it brought into the action as defendants Curtis Warren, the Witt heirs and the executors of the Paulina Mermis estate so that it might be reimbursed by them if held liable to plaintiffs.

In trial to the court the court had before it the stipulated facts already summarized and in addition heard evidence offered by the parties.

In deciding the issues the trial court made two separate rulings. First, it held that the two instruments to George W. Holland together constituted a valid mineral deed effective June 13, 1936, conveying to Holland an undivided one-fourth of the minerals in and under the west half of the quarter section in perpetuity and it further quieted the title to such mineral interest in plaintiffs. By

way of cross-appeal defendants have challenged these findings and orders. Second, it ruled that the entirety clause under which plaintiffs were claiming was not applicable inasmuch as Mrs. Mermis could not and did not lease the undivided interest owned by plaintiffs in the west half of the quarter section, therefore that interest was not a part of the "leased premises" as that term was contained in the entirety clause. Plaintiffs have appealed from that ruling.

At trial the third party defendants sought to shield their interest in the oil runs by having the conveyance upon which plaintiffs base their claim declared void. The cross-appeal reasserts the same defense. Since such declaration would terminate this litigation we first consider the cross-appeal.

Defendants advance two contentions. They assert the "Sale of Oil and Gas Royalty" instrument of July 3, 1924, was void when it was not recorded within ninety days after execution and was not listed for taxation, as provided by R. S. 1923, 79-420. Defendants also assert a void instrument cannot be ratified, contending the so-called ratification instrument of June 13, 1936, could not validate the earlier void one. The parties have presented arguments pro and con upon these issues but in our view these matters need not be determined.

Plaintiffs contend, and we think correctly so, that the 1936 instrument itself constituted a valid conveyance. We need not recite the two instruments. Evidently the parties were uncertain as to whether an ambiguity existed in the first instrument and it was to resolve any doubt that the second one was executed (see discussion in XVI JBK, Distinctions Between Royalties and Mineral Deeds, p. 28). The trial court treated the instruments as mineral deeds and for our purposes here we need make no further determination respecting their character. The third party defendants' attack upon the initial instrument is premised on the assumption it was in fact a mineral deed as distinguished from a royalty transfer.

Suffice it to say the second instrument described in detail the interest conveyed, using the correct legal description, and it also contained the following language:

". . . the said Geo. W. Holland is to have and own an undivided one fourth (¼) interest in and to the mineral rights upon the above and foregoing described land and real estate. . . ."

The instrument was signed and acknowledged by Mrs. Mermis as

owner and was duly delivered and recorded. Valid consideration appears.

To create or transfer an interest in oil and gas in place there must be compliance with the usual requirements for the transfer of an interest in land (1A Summers, Oil and Gas, § 134, pp. 245-249; 2 Williams and Meyers, Oil and Gas Law, § 439.2). Here we have a written memorandum sufficient to satisfy the statute of frauds, proper description, use of appropriate words of grant therein, delivery and acceptance of the instrument, consideration, and finally timely recordation under 79-420. No other requisites for a valid conveyance appear to be wanting. The trial court correctly found the existence of a valid mineral deed in and to an undivided one-fourth of the minerals in the west half of the quarter section in George W. Holland effective June 13, 1936, and the cross-appeal is not sustained.

We turn now to the principal appeal. Plaintiffs' claim to a proportionate share of royalty is based on a provision, commonly known as an "entirety clause", in the Dreiling lease. This clause provided:

"If the leased premises are now or hereafter owned in severalty or in separate tracts, the premises, nevertheless, may be developed and operated as an entirety, and the royalties shall be paid to each separate owner in the proportion that the acreage owned by him bears to the entire leased area. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may hereafter be divided by sale, devise, or otherwise, or to furnish separate measuring or receiving tanks for the oil produced from such separate tracts."

Their argument is this: Mrs. Mermis had a right to execute a lease with an entirety clause; in 1956 she did so by leasing the entire quarter section to Dreiling; when production was obtained plaintiffs were entitled to a proportionate share of the royalties by reason of the entirety clause, even though the production was only upon the east half of the quarter section.

In 3 Kuntz, Oil and Gas, § 45.4, under the heading "Correlation of royalty clause with entirety clause" we find this discussion as to the background and purpose of the entirety clause:

"Ordinarily, one important deliberate and calculated effect of the entirety clause is to overcome the non-apportionment rule which is applied in most jurisdictions. Under such rule, when the land under lease has been subdivided after the delivery of the oil and gas lease and the lessor's interest is owned in severalty, the royalty on production from a well is paid to the lessor or lessors only to the extent of their interests in the tract where the well is located, despite the fact that such well satisfies the drilling clause and the habendum

clause of the lease as to all of the land described in the lease and consequently serves to hold the lease by production. Such application of the non-apportionment rule produces dissatisfaction on the part of the lessors who own parts of the leased premises where there is no well. A dissatisfied lessor invariably sees an urgent necessity for further development of the lease by the drilling of a well or wells on the tract owned by such lessor. Further, even if there are many wells and such wells are evenly distributed so as not to be objectionable to the lessors, the lessee may find the situation objectionable in that he may be required to duplicate equipment and to install additional measuring tanks or meters, where production from all of such wells is not uniform in quality and volume. If the lease provides that the lessors must bear the expense of additional equipment which is required as the result of a subdivision of the land after a lease is granted, such added expense will provide the lessors with an additional reason to be dissatisfied. In order to overcome the objections just mentioned and to maintain harmony among all of the interested parties, as well as to make certain that the obligations of the lessee to develop the property will not be increased by any conveyance by the lessor, an entirety clause is frequently inserted in an oil and gas lease." (pp. 434-435.)

See also 3A Summers, Oil and Gas (Perm. ed.) § 609.

Kansas has been among the jurisdictions adhering to the so-called non-apportionment rule (*Carlock v. Krug*, 151 Kan. 407, 99 P. 2d 858). Our question is whether the entirety clause is applicable under the facts here.

Plaintiffs' argument is based on the assumption the term "leased premises" as used refers to and covers the entire quarter section. They contend that to hold otherwise would leave the clause with no office to perform. In support of their position plaintiffs rely almost entirely on *Hoffman v. Sohio Petroleum Co.*, 179 Kan. 84, 292 P. 2d 1107. There a half section of land was leased for oil and gas, the lease containing an entirety clause. The land was thereafter sold in separate tracts at a partition sale, subject to the existing lease. It was held the purchasers of the tract upon which no oil was produced were entitled to participate in the royalties from oil produced under the lease on the other tracts in the proportion indicated in the entirety clause.

Under its facts the Hoffman case is distinguishable from the situation here in that the oil and gas lease there was executed by the owner of the entire leased acreage prior to division of the mineral ownership and the entire acreage was subject to the lease containing the entirety clause. There can be no question as to the application of such provision to lands covered by the lease and which are separately owned at the time of the execution of the lease or subse-

quently. An equitable result is achieved when all the leased land is treated as a unit and royalties are paid on a proportionate basis. Here, however, the mineral interest was divided prior to execution of the lease containing the entirety clause.

We think the answer lies simply in resort to the language contained in that clause. Its premise for operation is: "If the *leased premises* are now or hereafter owned in severalty or in separate tracts". (Our emphasis.) Mrs. Mermis alone executed this lease. She was at the time owner of the east half of the quarter section (80 mineral acres) and an undivided three-fourths of the west half of the quarter section (60 mineral acres). This constituted the property embraced by the lease. As such it comprised the "leased premises" mentioned in the entirety clause. Plaintiffs or their predecessor in title did not execute or join in the lease. Mrs. Mermis could not and did not lease their mineral interest. Her execution of the lease, despite its recitation that it embraced the entire quarter section, was effective only as to the interest she owned. The "leased premises" were not the entire land (the quarter section) but only the interest therein subject to the lease. Hence the "leased premises" were not owned in severalty or in separate tracts at the time of the execution of the lease, or thereafter, and the entirety clause never became operative. The trial court took this view and we think correctly so.

This interpretation finds support in 3A Summers, Oil and Gas (Perm. ed.), § 609, where it is said:

"To bring the apportionment provision of the entirety clause into operation with respect to a grantee of an oil and gas lessor, the interest conveyed must be a portion of the leased premises." (p. 446.)

In *Jul-Tex Drilling Company, v. Pure Oil Company*, 201 F. Supp. 874, a similar conclusion was reached. There the Nelsons owned varying mineral interests in lands in three different sections. They executed an oil and gas lease on these lands which lease contained an entirety clause. Production was obtained upon one section only. The owners of the other undivided interest in the producing section had not joined in the execution of the Nelson lease. By reason of the entirety clause in the lease the Nelsons sought a proportionate share in the oil production calculated on their proportion of the entire acreage mentioned in the lease (which proportion would have been larger than if calculated on their interest in the producing section alone). The court declined to apply the entirety clause,

holding the leased premises were not owned in severalty because the Nelsons' lease was effective only as to the acreage actually owned by them.

We hold then that the term "leased premises" as used in an entirety clause in an oil and gas lease means the lessor's interest which is the subject of the lease.

Plaintiffs make other contentions we need notice only briefly. They would shore up their position by resort to a "lesser interest" clause contained in the Dreiling lease, contending that limiting the entirety clause to Mrs. Mermis' mineral ownership fails to give effect to the lesser interest clause. In *Carlock v. Krug, supra,* this court stated that the obvious purpose of a lesser interest clause was ". . . merely to provide that if it develops subsequent to the lease, that the lessor did not in fact have full title to the tract, he should receive royalties only in the proportion which his interest bears to the full title." (p. 413.) The court further in effect held a lesser interest clause did not contractually bring the apportionment rule into effect. There was no occasion for adjustment of royalty payments to Mrs. Mermis insofar as production from the east half of the quarter section was concerned because she owned all of it. Plaintiffs further argue the evidence showed the lessee Dreiling operated and developed the premises as a unit. The trial court made no finding upon this aspect; moreover, the evidence indicated the contrary. It revealed the existence of a division order of long standing in which plaintiffs were never named and to the proceeds of which they laid no claim until the filing of this suit, and further, the lessee twice, in 1956 and again in 1959, tried unsuccessfully to obtain from plaintiffs a lease on the west half. Certainly the evidence indicates the lessee never treated the quarter section as an entirety in his operations. We have considered other matters urged by plaintiffs but find nothing to warrant further discussion.

We affirm the orders and judgment of the trial court both as to the appeal and the cross-appeal.

APPROVED BY THE COURT.

SCHROEDER, J., dissenting: The question presented by this lawsuit is whether the plaintiffs (appellants), as the owners of an undivided interest in the minerals under a portion of the leased acreage, are entitled to share in the royalty oil produced from the leased acreage.

The oil and gas lease here in question contained the usual granting provisions and reserved the usual ⅛th of the production to the lessor as royalty. The lease dated June 18, 1956, was for a period of two years and as long thereafter as oil or gas is produced. *Production* was obtained within the primary term of the lease *on the quarter section which extended the lease on the whole quarter section.*

The "leased premises" in the lease here under consideration clearly refer to the *entire quarter section of land.* To hold otherwise would fail to give credence to the granting clause which covers:

". . . *all that certain tract of land,* together with any reversionary rights therein, situated in the County of Russell, State of Kansas, described as follows, to-wit:" [Here the legal description of the entire quarter section is given.] (Emphasis added.)

It would also fail to give credence to the "lesser interest" clause which reads:

"If said lessor owns *a less interest in the above described land than the entire and undivided fee simple estate therein,* then the royalties and rentals herein provided shall be paid the lessor only in the proportion which his interest bears to the whole and undivided fee. . . ." (Emphasis added.)

The lease also contained an "entirety" clause reading in part as follows:

". . . If the leased premises are *now* or hereafter *owned in severalty or in separate tracts,* the premises, nevertheless, may be developed and operated as an entirety, *and the royalties shall be paid to each separate owner in the proportion that the acreage owned by him bears to the entire leased area.* . . ." (Emphasis added.)

The validity of an entirety clause in an oil and gas lease was upheld and its effect discussed in *Hoffman v. Sohio Petroleum Co.,* 179 Kan. 84, 292 P. 2d 1107.

Paulina Mermis had previously executed the "Ratification of Mineral Deed" and thereby knew that her grantee, George W. Holland, or his successors, owned an interest in the west eighty. In negotiating the terms of the lease she was free to limit it to the east eighty if she chose to do so. On the contrary, she chose to include the entire quarter section. The third party defendants (all defendants other than Pan American) as her successors in interest are, of course, bound by such burdens as she chose to impose upon the lands. Clearly, she had the right to execute the lease with an

"entirety" clause. Any holding to the contrary would deprive her of rights possessed by her at the time of negotiating the lease.

The court's opinion overlooks the recitals in the "lesser interest" and "entirety" clauses.

Under the "lesser interest" clause Paulina Mermis agreed that if she owned a lesser interest than the "entire and undivided fee simple estate," then her royalties are to be that portion which her interest bears to the *"whole and undivided fee."*

She applies this language to *"the above described land,"* and not to *just her interest therein.*

The "entirety" clause recites:

". . . If the leased premises are *now* or hereafter *owned in severalty or in separate tracts,* . . ." (Emphasis added.)

The word "now," which the court overlooks, means the time when the lease was executed. When the lease was executed Paulina Mermis and her successors in interest owned 140 of the 160 mineral acres in the lease—80 acres under the east eighty and 60 acres under the west eighty. Clearly then, under the "lesser interest" clause of the lease she was entitled to 140/160ths or ⅞ths of the ⅛th reserved royalty.

The leased premises on the date of the lease were "owned in severalty" as to the west eighty, and "in separate tracts" as between the east and west eighties. The "entirety" clause directs that "the royalties shall be paid to each separate owner in the proportion that the acreage owned by him bears to the entire leased area." Thus, under the lease the remaining ⅛th of the ⅛th reserved royalty belongs to the plaintiffs.

None of the authorities upon which the court relies in its opinion applies to the factual situation here presented. The land here under lease was *not subdivided after* the delivery of the oil and gas lease. (See, 3 Kuntz, Oil and Gas, § 45.4.)

Under the plain and unambiguous language of the lease here in question, the plaintiffs have established a right to their proportionate share of the royalty reserved.

In my opinion the "Ratification of Mineral Deed" executed by Paulina Mermis on the 13th day of June, 1936, in favor of and delivered to George W. Holland, his heirs and assigns, was a sufficient conveyance of the mineral interest *standing alone* to cure any defect occasioned by the failure to record the previous mineral conveyance.

The second conveyance was properly recorded two days after its execution and delivery.

It is respectfully submitted the plaintiffs are entitled to their proportionate share of the ⅛th reserved royalty under the lease here in question, and the trial court should be reversed.